JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038-4502
(212) 545-4000
Attorney of Record:
     John A. Snyder II (JS 4786)
     Allison C. Spivak (AS 1628)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| NICOLE JENKINS, Individually and on Behalf of All other persons similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. |
| | : | 06 CV 3592 (Feuerstein/Azrack) |
| -against- | : | |
| | : | |
| HANAC HOME SERVICES, INC, HOME SERVICES, INC. and HANAC, INC. | : | |
| | : | |
| Defendants. | : | |

---

## AFFIDAVIT OF JOHN A. SNYDER II, ESQ. IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

STATE OF NEW YORK   )
                     ) SS :
COUNTY OF NEW YORK  )

     JOHN A. SNYDER II, ESQ. being duly sworn, deposes and says:

     1.    I am a member of the law firm of Jackson Lewis LLP, counsel for Defendants HANAC, Inc. and Home Services Systems, Inc. (incorrectly named in the Complaint as "Hanac Home Services, Inc., Home Services, Inc. and Hanac, Inc.") (collectively referred to herein as "Defendants") in the above-captioned matter. As such, I am fully familiar with the facts set forth herein.

     2.    This Affidavit is submitted in support of Defendants' Partial Motion to

Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).

3. A true and correct copy of Plaintiff's Complaint, filed with this Court on or about July 19, 2006, is attached hereto as Exhibit "A."

4. True and correct copies of the relevant portions of New York's Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. § 142.2 et seq., are attached hereto as Exhibit "B."

5. True and correct copies of all opinion letters from the New York State Department of Labor cited in Defendants' memorandum of law are attached hereto as Exhibit "C."

6. A true and correct copy of <u>Chan v. Triple 8 Palace, Inc.</u>, 03 Civ. 6048, (GEL), 2006 U.S. Dist. LEXIS 15780 (Mar. 30, 2006 S.D.N.Y.) is attached hereto as Exhibit "D."

JOHN A. SNYDER II, ESQ.

Sworn to and subscribed before me
this 15th day of September 2006.

Notary Public

JOHN F DONOHUE
Notary Public, State of New York
No. 01DO5059383
Qualified in Nassau County
Commission Expires April 22  20¡ ð

# EXHIBIT A

Case 1:06-cv-03592⬛JF-JMA    Document 1    Filed 07⬛/2006    Page 1 of 12

**CV 06 3592**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FEUERSTEIN, J.

AZRACK, J.

-------------------------------------X

NICOLE JENKINS, Individually and
on Behalf of All other persons similarly situated,

                Plaintiffs,

    -against-

HANAC HOME SERVICES, INC , HOME
SERVICES, INC and HANAC, INC.

             Defendants

-------------------------------------X

**COMPLAINT AND
JURY DEMAND**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

⭑ JUL 21 2006 ⭑

BROOKLYN OFFICE

## NATURE OF THE ACTION

1.    Plaintiff alleges on behalf of herself and other similarly situated current and
former employees of the Defendants and who elect to opt into this action pursuant to the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages
from Defendants for work performed which they received no compensation at all as well as
overtime work for which they did not receive overtime premium pay, as required by law, and (ii)
entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq*

2.    Plaintiff further complains on behalf of herself, and a class of other similarly
situated current and former employees of the Defendants, pursuant to Fed.R.Civ.P. 23, that they
are entitled to back wages from Defendants for work performed for which they received no
compensation at all as well as for overtime work for which they did not receive overtime
premium pay as required by the New York Labor Law §§ 650 *et seq*, and the supporting New
York State Department of Labor regulations.

1

# JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b)

4. Venue is proper in this district pursuant to 28 U.S.C. §1391.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

# THE PARTIES

6. Plaintiff, Nicole Jenkins was, at all relevant times, an adult individual, residing in Long Island City, New York, County of Queens

7. (a) Upon information and belief, Hanac Home Services, Inc. is a New York corporation, with its principal place of business at 32-75 Steinway Street, Astoria, Queens County, New York.

(b) Upon information and belief, Home Services, Inc. is a New York corporation, with its principal place of business at 32-75 Steinway Street, Astoria, Queens County, New York.

(c) Upon information and belief, Hanac, Inc. is a New York not-for-profit corporation, with its principal place of business at 31-14 30th Avenue, Astoria, Queens County, New York.

# COLLECTIVE ACTION ALLEGATIONS

8.     Pursuant to 29 U.S.C. §207. Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants in the United States any time since July 19, 2003 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid for hours that they actually worked and received no compensation as well as for overtime compensation at rates not less than one-half times the regular rate of pay for hours worked in excess of forty per workweek (the "Collective Action Members")

9.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are approximately 5,000 members of Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims

10.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interest that is contrary to or in conflict with those members of this collective action.

11.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the

3

members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

12.  Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a. whether the Defendants employed the Collective Action members within the meaning of the FLSA;

b. whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

c. what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

e. whether Defendants failed to pay the Collective Action Members for hours which they worked and received no compensation as well as overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f. whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

4

HANAV INC

g   whether Defendants are liable for all damages claimed hereunder, including
    but not limited to compensatory, punitive and statutory damages, interest,
    costs and disbursements and attorneys' fees; and

h   whether Defendants should be enjoined from such violations of the FLSA in
    the future.

13.  -  Plaintiff knows of no difficulty that will be encountered in the management of this
litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

14.   Plaintiff sues on her own behalf and on behalf of a class of persons under Rules
23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

15.  _  Plaintiff brings her New York Labor Law claim on behalf of all persons who were
employed by Defendants at any time since July 19, 2000, to the entry of judgment in this case
(the "Class Period"), who were non-exempt employees within the meaning of the New York
Labor Law and have not been paid for hours actually worked as well as overtime wages in
violation of the New York Labor Law (the "Class").

16.   The persons in the Class identified above are so numerous that joinder of all
members is impracticable. Although the precise number of such persons is unknown, and the
facts on which the calculation of that number are presently within the sole control of the
Defendants, upon information and belief, there are approximately 5,000 members of Class
during the Class Period

17.   The claims of Plaintiff are typical of the claims of the Class, and a class action is
superior to other available methods for the fair and efficient adjudication of the controversy—
particularly in the context of wage and hour litigation where individual plaintiffs lack the

5

financial resources to vigorously prosecute a lawsuit in federal court against corporate

defendants.

18.    The Defendants have acted or refused to act on grounds generally applicable to

the class, thereby making appropriate final injunctive relief or corresponding declaratory relief

with respect to the class as a whole.

19.    Plaintiff is committed to pursuing this action and has retained competent counsel

experienced in employment law and class action litigation.

20.  –  Plaintiff has the same interests in this matter as all other members of the class and

Plaintiff's claims are typical of the Class.

21.    There are questions of law and fact common to the Class which predominate over

any questions solely affecting the individual members of the Class, including but not limited to:

   a.  whether the Defendants employed the members of the Class within the

       meaning of the New York Labor Law;

   b.  whether the Defendants failed to keep true and accurate time records for all

       hours worked by Plaintiff and members of the Class;

   c.  what proof of hours worked is sufficient where employers fail in their duty to

       maintain time records;

   d.  whether Defendants failed and/or refused to pay the members of the Class any

       compensation for hours actually worked as well as premium pay for hours

       worked in excess of forty hours per workweek and more than ten hours a day

       within the meaning of the New York Labor Law;

6

e. whether the Defendants are liable for all damages claimed hereunder,

including but not limited to, interest, costs and disbursements and attorneys'

fees; and

f. whether the Defendants should be enjoined from such violations of the New

York Labor Law in the future.

# STATEMENT OF FACTS

22     At all relevant times, Defendants provided home health care services to the
general public in the metropolitan New York area.

23.    Starting in or about July 2003 until in or about March 2005, Plaintiff was
employed as a home health aide by the Defendants.

24.    Plaintiff's work was performed in the normal course of the Defendants' business
and was integrated into the business of the Defendants.

25.    The work performed by Plaintiff required little skill and no capital investment.
Her duties did not include managerial responsibilities or the exercise of independent judgment.

26.    Plaintiff often worked in excess of 10 hours per day and 40 hours a week, yet the
Defendants willfully failed to pay Plaintiff any compensation for all of the hours worked by her
as well as overtime compensation of one and one-half times her regular hourly rate, and for an
extra hour in each day worked over ten hours, in violation of the FLSA, the New York Labor
Law and the supporting New York State Department of Labor regulations.

27.    Plaintiff was employed by the Defendants from in or about July 2003 until in or
about March 2005. Throughout that time and, upon information belief, both before that time
(throughout the Class Period) and continuing until today, the Defendants have likewise
employed other individuals, like the Plaintiff (the Collective Action Members/the Class) in

7

positions that required little skill and no capital investment and their duties and responsibilities did not include any managerial responsibilities or the exercise of independent judgment. They do not have the authority to hire or fire other employees, and they are not responsible for making hiring and firing recommendations.

28.     Such individuals have worked in excess of 40 hours a week and more than 10 hours a day, yet the Defendants have likewise willfully failed to pay them any compensation for all of the hours worked by them as well as overtime compensation of one and one-half times their regular hourly rate, and for an extra hour in each day worked over ten hours, in violation of the FLSA and the New York Labor Law. As stated, the exact number of such individuals is presently unknown, but within the sole knowledge of the Defendants and can be ascertained through appropriate discovery.

29. Throughout all relevant time periods, upon information and belief, and during the course of Plaintiff's own employment, while Defendants employed Plaintiff and the Collective Action Members/the Class, the Defendants failed to maintain accurate and sufficient time records and failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA.

## FIRST CLAIM FOR RELIEF:
## FAIR LABOR STANDARDS ACT

30 -    Plaintiff, on behalf of herself and all Collective Action Members, reallege and incorporate by reference paragraphs 1 through 29 as if they were set forth again herein.

31.     At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

8

32. _ At all relevant times, Defendants employed, and/or continue to employ Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

33. _ Upon information and belief, at all relevant times, Defendants have had annual gross revenues in excess of $500,000.

34. Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b). Plaintiff's written consent is attached hereto and incorporated by reference.

35. _ At all relevant times, the Defendants had a policy and practice of refusing to pay for all hours worked as well as for all hours worked as well as overtime compensation to its employees for their hours worked in excess of forty hours per workweek.

36. _ As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members, for all hours worked by them as well as for all hours at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq* , including 29 U.S.C. §§ 207(a)(1) and 215(a).

37. As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

38. _ The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

39. Due to the Defendants' FLSA violations, Plaintiff, on behalf of herself and the Collective Action members, are entitled to recover from the Defendants, their unpaid wages,

9

overtime compensation, an additional amount equal as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF:
## NEW YORK LABOR LAW

40.  Plaintiff, on behalf of herself and the members of the Class, reallege and incorporate by reference paragraphs 1 through 29 as if they were set forth again herein.

41.  At all relevant times, Plaintiff and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

42.  Defendants willfully violated Plaintiff's rights and the rights of the members of the Class, by failing to pay them any compensation for all of the hours worked by them as well as overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, and an additional hour of pay for each hour worked in excess of ten hours in one day, in violation of the New York Labor Law and its regulations.

43.  The Defendants' New York Labor Law violations have caused Plaintiff and the members of the Class, irreparable harm for which there is no adequate remedy at law.

44.  Due to the Defendants' New York Labor Law violations, Plaintiff and the members of the Class are entitled to recover from Defendants their unpaid wages, overtime compensation, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law § 663(I).

10

# PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of herself and all other similarly situated Collective Action Members and members of the Class, respectfully requests that this Court grant the following relief:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d. An injunction against the Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e. An award of unpaid wages and overtime compensation due under the FLSA and the New York Labor Law;

11

f.    An award of liquidated and/or punitive damages as a result of the Defendants'

willful failure to pay wages and overtime compensation pursuant to 29 U S C. §

216;

g.    An award of prejudgment and postjudgment interest;

h.    An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

i.    Such other and further relief as this Court deems just and proper.

# DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure. plaintiff demands

a trial by jury on all questions of fact raised by the complaint.

Dated: New York. New York
        July 19, 2006

By: _____
        Fran L. Rudich (FR 7577)

Seth R. Lesser (SL 5560)
Fran L. Rudich (FR 7577)
LOCKS LAW FIRM, PLLC
110 East 55th Street, 12th Floor
New York, New York 10022
Telephone: (212) 838-3333
Facsimile: (212) 838- 5357

Jeffrey M. Gottlieb (JG 7905)
BERGER & GOTTLIEB
150 East 18th Street, Suite PHR
New York, New York 10003
Telephone (212) 228-9795

### ATTORNEYS FOR PLAINTIFF

12

# EXHIBIT B

**STATE OF NEW YORK**     **DEPARTMENT OF LABOR**



Minimum Wage Order for Miscellaneous Industries and Occupations

Part 142 of Title 12 of Official Compilation of Codes, Rules and Regulations
Based on Labor Law Changes Effective January 1, 2005

Promulgated by the Commissioner of Labor Pursuant to the Minimum Wage
Act (Article 19 of the New York State Labor Law)

**(07-05)**

## PART 142
### MISCELLANEOUS INDUSTRIES AND OCCUPATIONS
(Statutory authority: Labor Law [§ 21 [11], art. 19]
Article 2, § 21 [11] and Article 19, § 652)

**Subpart 142-1**      **Coverage**

**Subpart 142-2**      **Provisions Applicable to All Employees Subject to This Part, Except Employees in Nonprofitmaking Institutions Covered by the Provisions of Subpart 142-3**

**Subpart 142-3**      **Provisions Applicable to Employee in Nonprofitmaking Institutions Which Have Not Elected to be Exempt from Coverage Under a Minimum Wage Order**

### SUBPART 142-1
### COVERAGE

Sec
142-1 1 Coverage of Part

#### § 142-1.1      Coverage of Part
This Part shall apply to all employees, as such term is defined in this Part, except:

(a) employees who are covered by minimum wage standards in any other minimum wage order promulgated by the commissioner; and

(b) employees of a nonprofitmaking institution which has elected to be exempt from coverage under a minimum wage order, pursuant to subdivision 3 of section 652 of the Minimum Wage Act

#### § 142-1.2-142-1.5      Repealed.

#### § 142-1.15      Repealed.

### SUBPART 142-2
### PROVISIONS APPLICABLE TO ALL EMPLOYEES SUBJECT TO THIS PART, EXCEPT EMPLOYEES IN NONPROFITMAKING INSTITUTIONS COVERED BY THE PROVISIONS OF SUBPART 142-3

Sec.

142-2 1      Basic minimum hourly wage rate and allowances

2

| | |
|---|---|
| 142-2.2 | Overtime rate |
| 142-2.3 | Call-in pay |
| 142-2.4 | Additional rate for split shift and spread of hours |
| 142-2.5 | Allowances |

REGULATIONS

| | |
|---|---|
| 142-2.6 | Employer records |
| 142-2.7 | Statement to employee |
| 142-2.8 | Posting |
| 142-2.9 | Basis of wage payment |
| 142-2.10 | Deductions and expenses |
| 142-2.11 | Student obtaining vocational experience |
| 142-2.12 | Learner and apprentice rates |
| 142-2.13 | Rehabilitation programs |

DEFINITIONS

| | |
|---|---|
| 142-2.14 | Employee |
| 142-2.15 | Voluntary absence |
| 142-2.16 | Regular rate |
| 142-2.17 | Split shift |
| 142-2.18 | Spread of hours |
| 142-2.19 | Meal |
| 142-2.20 | Lodging |
| 142-2.21 | Tips |
| 142-2.22 | Required uniform |
| 142-2.23 | Student |

## § 142-2.1 Basic minimum hourly wage rate and allowances.

(a) The basic minimum hourly wage rate shall be:

(1) $5.15 per hour on and after March 31, 2000;
(2) $6.00 per hour on and after January 1, 2005;
(3) $6.75 per hour on and after January 1, 2006; and
(4) $7.15 per hour on and after January 1, 2007, or, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. section 206 or its successors.

(b) The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee. However, a residential employee--one who lives on the premises of the employer--shall not be deemed to be permitted to work or required to be available for

work: (1) during his or her normal sleeping hours solely because he is required to be on call during such hours; or (2) at any other time when he or she is free to leave the place of employment

### § 142-2.2 Overtime rate.

An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 et seq., the Fair Labor Standards Act of 1938, as amended, provided, however, that the exemptions set forth in section 13(a)(2) and (a)(4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (a)(4) of such act, overtime at a wage rate of 1 ½ times the basic minimum hourly rate. The Fair Labor Standards Act is published in the United States Code, the official compilation of Federal statutes, by the Government Printing Office, Washington, DC. Copies of the Fair Labor Standards Act are available at the following office:

New York State Department of Labor
  Counsel's Office
  State Office Building Campus,
  Building 12, Room 509
  Albany, NY 12240-0005

The applicable overtime rate shall be paid for each workweek:

|  | *Non-residential employees* | *Residential employees* |
| --- | --- | --- |
| For working time over | 40 hours | 44 hours |

### § 142-2.3 Call-in pay

An employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage.

### § 142-2.4 Additional rate for split shift and spread of hours.

An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

(a) the spread of hours exceeds 10 hours; or

4

(b) there is a split shift; or

(c) both situations occur

## § 142-2.5 Allowances.

(a) Allowances for meals, lodging and utilities. (1) Meals and lodging furnished by an employer to an employee may be considered a part of the minimum wage, but shall be valued at not more than:

  (i)   Meals .....$1.75 per meal on and after March 31, 2000;
        $2.05 per meal on and after January 1, 2005;
        $2.30 per meal on and after January 1, 2006; and
        $2.45 per meal on and after January 1, 2007.

  (ii)  Lodging  $2.20 per day on and after March 31, 2000;
        $2.55 per day on and after January 1, 2005;
        $2.90 per day on and after January 1, 2006; and
        $3.05 per day on and after January 1, 2007

(2) When a house or apartment and utilities are furnished by an employer to an employee, a fair and reasonable amount may be allowed for such facilities, which amount shall not exceed the lesser of either the value of prevailing rentals in the locality for comparable facilities, or $4.10 per day on and after March 31, 2000; $4.80 per day on and after January 1, 2005; $5.40 per day on and after January 1, 2006; and $5.70 per day on and after January 1, 2007.

(b) Allowances for tips (1) Tips, or gratuities, may be considered a part of the minimum wage, subject to the following conditions:

  (i) the particular occupation in which the employee is engaged is one in which tips have customarily and usually constituted a part of the employee's remuneration;

  (ii) substantial evidence is provided that the employee received in tips at least the amount of the allowance claimed  An example of substantial evidence is a statement signed by the employee that he actually received in tips the amount of the allowance claimed; and

  (iii) the allowance claimed by the employer is recorded on a weekly basis as a separate item in the wage record.

(2) Allowances for tips

  (i) Allowances for tips shall not exceed:

    (1) On and after March 31, 2000, 80 cents an hour for an employee whose weekly average of tips received is between 80 cents and $1.25 per hour, and $1.25 per hour for an employee whose weekly average of tips received is $1.25 per hour or more;

    (2) On and after January 1, 2005, 95 cents an hour for an employee whose

weekly average of tips received is between 95 cents and $1.45 per hour, and $1.45 per hour for an employee whose weekly average of tips received is $1.45 per hour or more;

(3) On and after January 1, 2006, $1.05 an hour for an employee whose weekly average of tips received is between $1.05 and $1.65 per hour, and $1.65 per hour for an employee whose weekly average of tips received is $1.65 per hour or more; and

(4) On and after January 1, 2007, $1.10 an hour for an employee whose weekly average of tips received is between $1.10 and $1.75 per hour, and $1.75 per hour for an employee whose weekly average of tips received is $1.75 per hour or more.

(ii) On and after March 31, 2000, no allowance for tips or gratuities shall be permitted for an employee whose weekly average of tips is less than 80 cents an hour. On and after January 1, 2005, no allowance for tips or gratuities shall be permitted for an employee whose weekly average of tips is less than 95 cents an hour. On and after January 1, 2006, no allowance for tips or gratuities shall be permitted for an employee whose weekly average of tips is less than $1.05 an hour. On and after January 1, 2007, no allowance for tips or gratuities shall be permitted for an employee whose weekly average of tips is less than $1.10 an hour.

(c) No allowance for the supply, maintenance or laundering of required uniforms shall be permitted as part of the minimum wage. Where an employee purchases a required uniform, he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages. Where an employer fails to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage prescribed herein:

(1) $6.40 per week on and after March 31, 2000, if the employee works more than 30 hours weekly; $5.05 per week on and after March 31, 2000, if the employee works more than 20 but not more than 30 hours weekly; and $3.05 per week on and after March 31, 2000, if the employee works 20 hours or less weekly;

(2) $7.45 per week on and after January 1, 2005, if the employee works more than 30 hours weekly; $5.90 per week on and after January 1, 2005, if the employee works more than 20 but not more than 30 hours weekly; and $3.55 per week on and after January 1, 2005, if the employee works 20 hours or less weekly;

(3) $8.40 per week on and after January 1, 2006, if the employee works more than 30 hours weekly; $6.60 per week on and after January 1, 2006, if the employee works more than 20 but not more than 30 hours weekly; and $4.00 per week on and after January 1, 2006, if the employee works 20 hours or less weekly; and

(4) $8.90 per week on and after January 1, 2007, if the employee works more than 30 hours weekly; $7.00 per week on and after January 1, 2007, if the employee works more than 20 but not more than 30 hours weekly; and $4.25 per week on and after January 1, 2007, if the employee works 20 hours or less weekly

## REGULATIONS

### § 142-2.6 Employer records.

(a) Every employer shall establish, maintain and preserve for not less than six years, weekly payroll records which shall show for each employee:

(1) name and address;

(2) social security number;

(3) wage rate;

(4) the number of hours worked daily and weekly, including the time of arrival and departure of each employee working a split shift or spread of hours exceeding 10;

(5) when a piece-rate method of payment is used, the number of units produced daily and weekly;

(6) the amount of gross wages;

(7) deductions from gross wages;

(8) allowances, if any, claimed as part of the minimum wage;

(9) net wages paid; and

(10) student classification

(b) In addition, for each individual permitted to work as a staff counselor in a children's camp, or in an executive, administrative or professional capacity, an employer's records shall show:

(1) name and address;

(2) social security number;

(3) description of occupation; and

(4) for individuals working in an executive or administrative capacity, total wages, and the value of allowances, if any, for each payroll period

(c) For each individual for whom student status is claimed, an employer's records shall contain a statement from the school which the student attends, indicating such student:

(1) is a student whose course of instruction is one leading to a degree, diploma or certificate; or

(2) is required to obtain supervised and directed vocational experience to fulfill curriculum requirements

(d) Employers, including those who maintain their records containing the information required by this section at a place outside of New York State, shall make such records or sworn certified copies thereof available upon request of the commissioner at the place of employment.

### § 142-2.7 Statement to employee.

Every employer covered by this Part shall furnish to each employee a statement with every payment of wages, listing hours worked, rates paid, gross wages, allowances, if

any, claimed as part of the minimum wage, deductions and net wages.

### § 142-2.8 Posting.

Every employer covered by this Part shall post in a conspicuous place in his or her establishment a notice issued by the Department of Labor summarizing minimum wage provisions.

### § 142-2.9 Basis of wage payment.

The minimum and overtime wage provided by this Part shall be required for each week of work, regardless of the frequency of payment, whether the wage is on a commission, bonus, piece rate, or any other basis.

### § 142-2.10 Deductions and expenses.

(a) Wages shall be subject to no deductions, except for allowances authorized in this Part, and except for deductions authorized or required by law, such as for social security and income tax. Some examples of prohibited deductions are:

(1) deductions for spoilage or breakage;
(2) deductions for cash shortages or losses;
(3) fines or penalties for lateness, misconduct or quitting by an employee without notice

(b) The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by an employer.

### § 142-2.11 Student obtaining vocational experience.

A student is not deemed to be working or to be permitted to work if, in order to fulfill the curriculum requirements of the educational institution which such student attends, such student is required to obtain supervised and directed vocational experience in another establishment.

### § 142-2.12 Learner and apprentice rates

No learner or apprentice shall be paid less than the minimum rate prescribed in this Part.

### § 142-2.13 Rehabilitation programs.

For an individual employed as part of a rehabilitation program approved by the commissioner, the payment of compensation under such program shall be deemed to

meet the requirements of this Part

# DEFINITIONS

## § 142-2.14 Employee.

(a) *Employee* means any individual employed, suffered or permitted to work by an employer, except as provided below.

(b) Employee does not include any individual employed by a Federal, State or municipal government or political subdivision thereof.

(c) Employee also does not include any individual permitted to work in, or as:
    (1) Baby-sitter; companion
        (i) The term *baby-sitter* means an individual in service as a part-time baby-sitter in the home of the employer.
        (ii) The term *companion* means someone who lives in the home of an employer for the purpose of serving as a companion to a sick, convalescing or elderly person, and whose principal duties do not include housekeeping.
    (2) Booth renter. The term *booth renter* means someone who leases or rents space in a beauty establishment or shop and who operates as an owner or an independent contractor.
    (3) Labor on a farm. Farm employees are covered under the provisions of the minimum wage order for farm workers, Part 190 of this Title, promulgated by the Commissioner of Labor pursuant to article 19-A of the New York State Labor Law.
    (4) Executive, administrative or professional capacity. (i) Executive Work in a *bona fide executive* capacity means work by an individual:
        (*a*) whose primary duty consists of the management of the enterprise in which such individual is employed or of a customarily recognized department or subdivision thereof;
        (*b*) who customarily and regularly directs the work of two or more other employees therein;
        (*c*) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight;
        (*d*) who customarily and regularly exercise discretionary powers; and
        (*e*) who is paid for his services a salary of not less than:
            (1) $386.25 per week on and after March 31, 2000, inclusive of board, lodging, other allowances and facilities;
            (2) $450.00 per week on and after January 1, 2005, inclusive of board, lodging, other allowances and facilities;
            (3) $506.25 per week on and after January 1, 2006, inclusive of board, lodging, other allowances and facilities; and

(4) $536 10 per week on and after January 1, 2007, inclusive of board, lodging, other allowances and facilities.

(ii) Administrative. Work in a *bona fide administrative capacity* means work by an individual:

(*a*) whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general operations of such individual's employer;

(*b*) who customarily and regularly exercises discretion and independent judgment;

(*c*) who regularly and directly assists an employer, or an employee employed in a bona fide executive or administrative capacity (e g., employment as an administrative assistant); or who performs, under only general supervision, work along specialized or technical lines requiring special training, experience or knowledge; and

(*d*) who is paid for his services a salary of not less than:

(1) $386 25 per week on and after March 31, 2000, inclusive of board, lodging, other allowances and facilities;

(2) $450 00 per week on and after January 1, 2005, inclusive of board, lodging, other allowances and facilities;

(3) $506.25 per week on and after January 1, 2006, inclusive of board, lodging, other allowances and facilities; and

(4) $536.10 per week on and after January 1, 2007, inclusive of board, lodging, other allowances and facilities.

(iii) Professional. Work in a *bona fide professional capacity* means work by an individual:

(a) whose primary duty consists of the performance of work: requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes; or original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination or talent of the employee; and

(b) whose work requires the consistent exercise of discretion and judgment in its performance; or

(c) whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work) and is of such a character that the output produced or result accomplished cannot be standardized in relation to a given period of time

(5) Outside salesperson. The term *outside salesperson* means an individual who is customarily and predominantly engaged away from the premises of the employer and not

at any fixed site and location for the purpose of:

(i) making sales;

(ii) selling and delivering articles or goods; or

(iii) obtaining orders or contracts for service or for the use of facilities

(6) Taxicab driver. The term *driver engaged in operating a taxicab* means an individual employed to drive an automobile equipped to carry no more than seven passengers, which is used in the business of carrying or transporting passengers for hire on a zone or meter fare basis, and the use of which is generally limited to a community's local transportation needs and which is not operated over fixed routes, or between fixed terminals, or under contract

(7) Student in or for a college or university fraternity, sorority, student association or faculty association. A student is not deemed to be an employee if he or she is permitted to work in or for a college or university fraternity, sorority, student association or faculty association, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and which is recognized by such college or university

(8) Staff counselor in a children's camp. (i) A *staff counselor* is a person whose duties primarily relate to the guidance, instruction, supervision and care of campers in a children's camp, whether such work involves direct charge of, or responsibility for, such activities, or merely assistance to persons in charge. The term *staff counselor* includes, but is not limited to: head counselor, assistant head counselor, specialist counselor instructor (such as swimming counselor, arts and crafts counselor, etc.), group or division leader, camp mother, supervising counselor, senior counselor, counselor, general counselor, bunk counselor, assistant counselor, co-counselor, junior counselor, and counselor aide.

(ii) Children's *camp* means any establishment which, as a whole or part of its activities, is engaged in offering for children, on a resident or nonresident basis, recreational programs of supervised play or organized activity in such fields as sports, nature lore, and arts and crafts, whether known as camps, play groups, play schools, or by any other name The term children's camp does not include an establishment which is open for a period exceeding 17 consecutive weeks during the year.

## § 142-2.15 Voluntary absence.

*Voluntary absence* includes any absence from work not directed by the employer or the employer's agent and not designed or planned by the employer or the employee to evade minimum wage standards Voluntary absence does not include any absence contemplated in the employment contract or incurred as a condition of continued employment; or at the direction or suggestion of the employer or his agent; or recurrent or periodic absence, except such absence for medical treatment under a doctor's care

## § 142-2.16 Regular rate.

The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis, salary, or any basis other

than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings

## § 142-2.17 Split shift.

A *split shift* is a schedule of daily hours in which the working hours required or permitted are not consecutive. No meal period of one hour or less shall be considered an interruption of consecutive hours.

## § 142-2.18 Spread of hours.

 The *spread of hours* is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty.

## § 142-2.19 Meal.

A *meal* shall provide adequate portions of a variety of wholesome, nutritious foods, and shall include at least one of the types of foods from all four of the following groups:

    (a) fruits or vegetables;
    (b) cereals, bread or potatoes;
    (c) eggs, meat, fish or poultry;
    (d) milk, tea or coffee; except that for breakfast, group (c) may be omitted if both cereal and bread are offered in group (b).

## § 142-2.20 Lodging.

*Lodging* includes room, house or apartment, and means living accommodations which meet generally accepted standards for protection against fire, and all structural, sanitation and similar standards in State and local laws, codes, regulations and ordinances applicable to the premises.

## § 142-2.21 Tips.

*Tips*, or *gratuities*, shall mean voluntary contributions received by the employee from a guest, patron, customer or other person for services rendered. No gratuities or tips shall be deemed received for the purpose of this Part if their acceptance is prohibited by the employer or prohibited by law.

## § 142-2.22 Required uniform.

A *required uniform* shall be that clothing worn by an employee, at the request of the employer, while performing job-related duties or to comply with any State, city or local law, rule or regulation. It does not, however, include clothing that may be worn as part of an employee's ordinary wardrobe.

# EXHIBIT C



COUNSEL'S OFFICE
(718) 797-7388

April 26, 1994

Gerald J. Stefanick
Wage-Hour Consultant
Cresswell Garden
Ashland, Pennsylvania 17921

Re: Request for Opinion
Spread of Hours/Meals and Lodging

Dear Mr. Stefanick:

Your April 4, 1994 letter to Supervising Labor Standards Investigator William J. Smith, requesting an opinion on certain issues arising under New York State's Minimum Wage Act and Orders, has been referred to this office for response.

First, in relation to the requirement, set forth in 12 NYCRR §§ 137-1.6, 138-2.6 and 142-2.4, that an employee receive one hour's pay at the basic minimum hourly wage rate (before allowances), in addition to the minimum hourly wage otherwise required, for any day in which the spread of hours exceeds ten, you ask whether an employee who works two 11-hour days at $10.00 per hour, for a total of $220.00, would be due additional compensation because of the spread of hours. In this example, the minimum wage for this time worked would be 22 times the basic minimum hourly wage ($4.25), or $93.50, plus one hour at the basic minimum hourly wage for each of the two days worked, for a total of $102.00. Therefore, the employee would be due no additional compensation.

In your second example, an employee who receives $100.00 in tips over two 12-hour working days is paid $3.30 per hour, for a total of $79.20. While your letter does not expressly so state, it appears that the employee in question is covered by the Minimum Wage Order for the Restaurant Industry (12 NYCRR Part 137) or the Minimum Wage Order for the Hotel Industry (12 NYCRR Part 138), which would allow the employer to take a tip allowance of $1.35 per hour against the minimum wage for the employee (whose tips average $4.17 per hour). The minimum wage for this employee would be 24 times $2.90, or $69.60, plus one hour at the basic minimum

hourly wage (before allowances) for each of the two days worked, for a total of $78.10. Therefore, the employee would be due no additional compensation.

You next ask for the maximum allowances for meals and lodging for an employee in a restaurant or a country club. An employee in a restaurant is covered by the Minimum Wage Order for the Restaurant Industry (12 NYCRR Part 137). 12 NYCRR §137-1.8 sets the maximum meal allowance at $1.45 per meal (for a maximum of two meals per day), and the maximum lodging allowances at $1.05 per day and $6.65 per week. An employee in a country club is covered by the Minimum Wage Order for Miscellaneous Industries and Occupations (12 NYCRR Part 142). 12 NYCRR §142-2.5(a) sets the maximum meal allowance at $1.45 per meal and the maximum lodging allowance at $1.80 per day, except that, when a house or apartment and utilities are furnished by an employer to an employee, a fair and reasonable amount may be allowed for such facilities, not to exceed the lesser of the value of prevailing rentals in the locality for comparable facilities or $3.40 per day.

You finally ask whether a caddie who services particular players would be considered an employee of the golf course. The New York State Department of Labor would consider the golf course to be the employer of such a caddie. Golf courses are covered by the Minimum Wage Order for Miscellaneous Industries and Occupations.

I trust that the foregoing is responsive to your inquiry. If you have any further questions, you may contact me at (718) 797-7310.

Very truly yours,

Robert Ambaras
Senior Attorney

RA:al

cc: Richard J. Polsinello
    Jonathan Rosenblatt
    William J. Smith
    Opinion File (B & A)

**George E. Pataki,** Governor


NYS Department of Labor
Workforce
New York
Put us to work for you

**Linda Angello,** Commissioner

April 12, 2006

Jennifer Shatagin
Sr. Payroll Coordinator
Bruegger's Enterprises, Inc.
P.O. Box 1082
Burlington, Vermont 05402-1082

Re: Definition of "Spread of Hours"
File Number: RO-06-0027

Dear Ms. Shatagin:

I have been asked to respond to your March 27, 2006, letter in which you request an interpretation of the term "spread of hours" as used in various New York State regulations. Enclosed please find copies of all New York State regulations referred to in this letter.

Regulation 12 NYCRR §142-2.4(a) states that "(a)n employee shall receive one hour's pay at the minimum hourly wage rate, in addition to the minimum wage required by this part for any day in which: (a) the spread of hours exceeds 10 hours . . . " Regulation 12 NYCRR §142-2.18 defines "spread of hours" as "the interval between the beginning and end of an employee's workday. The spread of hours includes working time plus time off for meals plus intervals off duty."

For an interpretation of the phrase "time off for meals plus intervals off duty," please note that New York State's requirements for meal breaks are set forth in §162 of the Labor Law, a copy of which is enclosed. Please also note that the United States Department of Labor, under the Fair Labor Standards Act, 29 CFR §785.18, states that "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on call time."

With these statutes and regulations in mind, take as an example Employee A, who works from 8:00 a.m. to 8:00 p.m. In compliance with Labor Law §162(2), Employee A is given, on that day, a half hour lunch break from noon to 12:30 pm. In compliance with Labor Law §162(3) he is also given a half hour supper break from 5:30 p.m. to 6:00 p.m. Employee A is also given two fifteen minute rest breaks, one at 10:00 a.m. and one at 3:00 p.m.

In this example, Employee A has worked a twelve hour "spread of hours," in which he has eleven hours of working time. The "interval between the beginning and end of (his) workday" was 8:00 a.m. to 8:00 p.m. This spread of hours, according to Regulation 12 NYCRR §142-2.18, must include "working time plus time off for meals plus intervals off duty," i.e. the hours worked plus the two half hour meal breaks and the two fifteen minute rest breaks. Please

note that while the meal breaks are included as part of the spread of hours calculation, there is no requirement in law that the employee be paid for such hours.

Under these circumstances, Employee A must be paid a total of at least $81.00, consisting of $74.25 for eleven hours at the minimum wage of $6.75, plus an additional one hour at $6.75 for "spread of hours" pay. (Please note that this example assumes that Employee A does not work more than 40 hours in the week in question and, therefore, is not entitled to overtime for any of the hours worked that day as per the Fair Labor Standards Act) (see 29 USCA§207(a)(1)).

It is important to note that the "spread of hours" regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage. All employees working a spread of twelve hours who have eleven hours of working time must, therefore, receive at least $81.00. However, if the employee's regular wages for those eleven hours would be equal to or greater than $81.00, the employer is under no obligation to pay any additional wages. For example, if Employee A is normally paid $7.50 per hour, no payment above his regular pay is required as his regular wages for a spread of twelve hours of work, less one hour of meal breaks, would be $82.50, an amount greater than pay for the same time at minimum wage plus one hour of "spread of hours" wages. If, however, Employee A is normally paid $7.00 per hour he would be entitled to an additional $4.00 above his regular wages (eleven hours @ $7.00 per hour + $4.00 = $81.00).

Although you state that "our current payroll system cannot electronically monitor hours worked on a daily basis," please be advised that regulation 12 NYCRR §142-2.6(a)(4) states that "(e)very employer shall establish, maintain and preserve for not less than six years, weekly payroll records which shall show for each employee: . . . the number of hours worked *daily* and weekly, *including the time of arrival and departure of each employee working a split shift or spread of hours exceeding 10*" (emphasis added). To the extent, therefore, that your current record keeping system does not permit you to record the hours worked daily by each employee, or the arrival and departure time of each employee working a spread of hours, such record keeping system does not enable you to comply with New York State Law.

The "spread of hours" regulation applies to all employees as defined in 12 NYCRR §142-2.14 no matter what their rate or manner of pay (except for those persons exempted from the definition of "employee" as set forth in that regulation.)

Unfortunately, this office cannot advise you as to whether "time sheets need to be reviewed manually to follow this law" or as to the "options" that you may have. The Department of Labor's Counsel's Office can only provide the Commissioner of Labor's interpretation of law as set forth above. This office cannot provide you with legal advice, or instruct you in how you may comply with the law given any special circumstances of your business. You may, however, contact your local Division of Labor Standards office for an evaluation of your current procedures and suggestions for bringing such procedures into compliance with State and federal law (see enclosed pamphlet). In the alternative, you may consult private counsel of your choice for such advice.

Please note that the *Yang v. ACBL* case referred to in your letter has been cast into doubt by a later case from the same court. In *Yang*, a Judge of the U.S. District Court, Southern District of New York ruled in that case, on December 5, 2005, that the above described interpretation of the regulations is incorrect. The Judge ruled that this interpretation "would carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage." The Judge therefore awarded the employees in that case an additional one hour of wages at the minimum wage for each day in which the spread of hours exceeded ten.

On March 30, 2006, a different Judge of the U.S. District Court, Southern District of New York ruled in *Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. Lexis 15780, that the Department of Labor's above described interpretation of 12 NYCRR §142-2.4 "makes sense, since [the regulation] by its own terms is concerned only with ensuring an additional amount above the "*minimum* wage" when certain conditions are met" (emphasis in original). Commenting on the ruling in *Yang*, the Judge in *Chan* stated:

> This Court respectfully disagrees. The plain text of [the
> regulation] ensures an additional wage only "in addition to the
> *minimum* wage" required under New York Law . . . It is therefore
> to be expected that the provision will not affect workers whose
> total weekly compensation is already sufficiently above the
> minimum rate. (emphasis in original).

As two judges of the same Court disagree on the proper interpretation of 12 NYCRR §142-2.4, and as the most recent decision from that Court agrees with this Department's interpretation, the Department of Labor will continue its present interpretation unless and until further guidance comes from the U.S. District Court, Southern District of New York or a higher court.

This opinion has been provided on the basis of the facts set forth in your letter of March 27, 2006. A different opinion may result if such facts were not set forth accurately, or if other relevant facts were not provided.

Thank you for your consideration in this matter. If you have any questions, please feel free to contact me.

Very truly yours,

Jeffrey G. Shapiro
Senior Attorney

JGS:
enc:
cc: Richard Cucolo
     Carmine Ruberto



December 19, 2005

Roni E. Glaser
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue
Mineola, New York 11501

> Re:   Opinion Letter Request
> 12 NYCRR 142-2.3, 2.4

Dear Ms. Glaser:

Recently your office forwarded a letter to Robert Ambaras asking for an opinion letter regarding the Department of Labor's interpretation and enforcement position of the Miscellaneous Wage Orders of the Commissioner concerning 12 NYCRR 142-2.3 and 2.4. This matter has been assigned to the undersigned for response, as Mr. Ambaras is no longer with this office. The applicable regulations read as follows:

§ 12 NYCRR § 142-2.3 Call-in pay.

An employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage.

§ 142-2.4 Additional rate for split shift and spread of hours.

An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

(a) the spread of hours exceeds 10 hours; or
(b) there is a split shift; or
(c) both situations occur.

The fact pattern put forth in your letter is an employee working in 2005 twelve hours per day for three days in a week. Under the basic minimum wage rate in effect in 2005, calculated as 36 hours at six dollars per hour, plus three additional hours of pay for spread hours, totaling an additional $18.00, the total to be paid to the worker is $234.00.

In the second fact pattern, you ask the consequences under the minimum wage rate rules when the employee is paid $7.00 per hour. In that situation, the employee would receive $252.00 for seven dollars per hour for the 36 hours worked. No further spread time pay is needed, as the amount paid at the rate of $7.00 per hour exceeds the amount the worker would receive at the minimum wage rate.

I hope this has answered your questions. Please feel free to contact the undersigned with any further questions.

Very truly yours,

Casey E. Callanan
Senior Attorney

CEC:rjb
RO0552

# EXHIBIT D

LEXSEE 2006 US DIST LEXIS 15780

**HENG CHAN, SHING TAO AU, YAN BIN CAO AI YIN CHEN, WAN ZHEN JIANG, FONG LI, JIAN YUN LIN, WEI CHAO TAN, FENG QIN ZHENG TANG, SUM KAY WONG, and YONG CAI ZHANG, Plaintiffs, v. TRIPLE 8 PALACE, INC., SUN YUE TUNG CORP. d/b/a 88 PALACE, KUNG TAK YEUNG KWOK MING CHAN a/k/a K.M. CHAN, GRACE CHAN, HANG LI, GUI YANG, GONG GUI GUAN, CHEUK HONG LAU, and YEUNG CHAO LO, Defendants.**

**03 Civ. 6048 (GEL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 15780*

**March 30, 2006, Decided**
**March 31, 2006, Filed**

**PRIOR HISTORY:** *Heng Chan v. Triple 8 Palace, 2005 U.S. Dist. LEXIS 16520 (S.D.N.Y., Aug. 11, 2005)*

**COUNSEL:** [*1] Mark S. Cheffo, Rachel B. Passeretti, Kenneth Schwartz, Angie Hardister, Melanie C. Falco, Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY; and Raymond Brescia, Urban Justice Center, New York, NY, for Plaintiffs.

Daniel Hochheiser and Michael E. Sande, Hochheiser & Hochheiser LLP, New York, NY, for Defendants Gui Yang, Kung Tak Yeung, Yeung Chao Lo, Gong Gui Guan, Cheuk Hong Lau, Hang Li, and Sun Yue Tung Corp.

Leonard W. Wagman and David Lackowitz, Snow Becker Krauss P.C., New York, NY, for Defendants Kwok Ming Chan, Grace Chan, and Triple 8 Palace, Inc.

**JUDGES:** GERARD E. LYNCH, United States District Judge.

**OPINION BY:** GERARD E. LYNCH

**OPINION:**

### OPINION AND ORDER

GERARD E. LYNCH, District Judge:

Plaintiffs Heng Chan, Shing Tao Au, Yan Bin Cao, Ai Yin Chen, Wan Zhen Jiang, Fong Li, Jian Yun Lin, Wei Chao Tan, Feng Qin Zheng Tang, Sum Kay Wong, and Yong Cai Zhang ("plaintiffs") move for partial summary judgment against defendants Triple 8 Palace, Inc., Grace Chan, and Kwok Ming Chan ("Triple 8 defendants" or "Triple 8"), as well as against Sun Yue Tung Corp. (d/b/a 88 Palace), Gui Yang, Kung Tak Yeung, Hang Li, Gong Gui Guan, Cheuk Hong Lau, and Yeung Chao Lo ("88 Palace [*2] defendants" or "88 Palace"). Specifically, plaintiffs seek summary judgment on the question of liability with respect to their claims that defendants (1) illegally retained a portion of employees' tips received at banquets held at the restaurants; (2) illegally retained a portion of other, non-banquet tips received by plaintiffs; (3) failed to give proper notice to plaintiffs regarding minimum wage laws; (4) violated New York state's spread-of-hours provision; and (5) failed to compensate plaintiffs for uniform-related costs. The 88 Palace defendants cross-move for summary judgment, seeking dismissal of all claims against them. Both motions will be denied in their entirety.

### BACKGROUND

I. The Parties

Plaintiffs are eleven Chinese immigrants who worked as waiters, busboys, and captains at a New York City Chinese restaurant formerly known as Triple 8 Palace, and now known as 88 Palace. n1 On August 8, 2002, defendants and former owners Kwok Ming Chan and Grace Chan sold Triple 8 Palace to a group of investors, who changed the restaurant's name to 88 Palace. Investors in 88 Palace included the former president of Triple 8 Palace, defendant Kung Tak Yeung, as well defendants [*3] Gui Yang, Yeung Chao Lo, and Gong Gui Guan. Evidence in the record suggests that Dai Hai Nan purchased one half of one share in the restaurant, but defen-

dants claim that he never owned any interest in the business. Defendant Cheuk Hong Lau was an employee at 88 Palace, and defendant Hang Li was an employee at both restaurants.

> n1 Some of the plaintiffs continue to work at 88 Palace. (See 88 Palace Response to P. Local R. 56.1 Statement P1.) However, rather than shift back and forth from the present to past tense depending on the particular plaintiff or restaurant being discussed, the Court will, for the sake of readability, refer to all of plaintiffs' activities--as well as defendants' activities--in the past tense.

## II. Labor Practices at Triple 8 and 88 Palace

Plaintiffs received a regular hourly wage from 88 Palace of $ 3.30 if they were waiters or busboys, and $ 3.70 if they were captains. At Triple 8, they received approximately $ 3.30 in regular hourly wages. n2 At both restaurants, plaintiffs [*4] received additional compensation in the form of tips received directly from customers; tips were pooled and then distributed according to a predetermined formula among plaintiffs and other employees--including, at 88 Palace, Dai Hai Nan and defendant Gong Gui Guan. Plaintiffs also received a portion of a fifteen percent fee added to customers' bills for large parties and banquets held frequently at the restaurants. At 88 Palace, twenty-five percent of this fee would be retained by the restaurant after each banquet, and the remaining seventy-five percent would be distributed to plaintiffs and other employees. At Triple 8, the restaurant would keep $ 16,000 in banquet fees per month and distribute any remaining amount to the employees. Though these figures are not in dispute, the parties have entirely different theories regarding the proper characterization of the banquet fees for purposes of minimum wage laws. Plaintiffs argue that the fees were variable, optional "tips," while both sets of defendants maintain that they were fixed, mandatory "service charges." n3

> n2 Plaintiffs allege that prior to 1997, their hourly rages did not exceed $ 2.02, with busboys receiving as little as $ 1.20. (P. Mem. Summary Judgment at 13.) Post-1997 wage amounts are also disputed, but for purposes of the instant motion, plaintiffs concede that regular hourly wages were raised for all plaintiffs to at least $ 3.30 after 1997. (Id. at 14-15 & n.11.) Certain evidence in the record suggests that the amount may have been slightly more than $ 3.30 (see Kwok Ming

Chan Affidavit Ex. D), but the minor difference is immaterial for purposes of the instant motion.

[*5]

> n3. The Court's use of the term "fee" is intended to be neutral as between these competing characterizations, and should not be taken to imply a mandatory charge.

Both of the defendant restaurants required their employees to wear uniforms during work hours, although the precise nature of this requirement is the subject of some disagreement. Triple 8 asserts, for example, that contrary to plaintiffs' claims, some of its employees, including its captains, wore their own clothing. The principal disagreement regarding the uniforms, however, pertains to whether the defendant restaurants maintained the uniforms for their employees as required by law. Plaintiffs allege that both restaurants failed to reimburse plaintiffs for uniform-related costs. Triple 8 contends that it provided sufficient uniform-laundering services; 88 Palace, in contrast, asserts that it was under no legal obligation to launder the uniforms or reimburse plaintiffs for uniform-related costs, because plaintiffs earned well in excess of the minimum wage.

Finally, the parties offer conflicting accounts of the restaurants' compliance [*6] with New York and federal statutes requiring employers to provide notice to employees of certain minimum wage guarantees. Plaintiffs argue that neither restaurant posted notice or otherwise informed employees as required under the relevant statutes. The Triple 8 defendants directly dispute this allegation, claiming that notice was posted at all times at Triple 8. The 88 Palace defendants argue primarily that they were not obligated to post notice of the minimum wage laws because plaintiffs earned in excess of the minimum wage even without tips.

## DISCUSSION

The motions submitted by plaintiffs and 88 Palace n4 require the Court to consider five distinct issues with respect to each set of defendants: (1) whether defendants' retention of a portion of the banquet service fees violated state and federal laws providing that employees shall retain all of the tips they receive; (2) whether defendants violated these same provisions by allowing certain managers and part-owners to retain a portion of non-banquet tips that customers offered to plaintiffs during the regular course of business; (3) whether defendants violated state and federal laws requiring notice to employees of minimum [*7] wage guarantees; (4) whether defendants violated New York State's spread-of-hours provision; and (5) whether defendants violated New York law requiring

employers to reimburse their employees for uniform-related expenses. On each of these issues, the moving party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; see *Reid v. Aetna Life Ins. Co., 393 F. Supp. 2d 256, 264 (S.D.N.Y. 2005)*. "Once a party moving for summary judgment has made the requisite showing that there is no factual dispute, the nonmoving party bears the burden of presenting evidence to show that there is, indeed, a genuine issue for trial." *Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001)*. The Court must view the record in the light most favorable to the non-movant and resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *Reid, 393 F. Supp. 2d at 264.* [*8]

n4 Triple 8 opposes plaintiffs' motion but does not file a cross-motion.

## I. Banquet Service Fees

### A. Legal Standard

Federal and state laws require employers to pay employees a legally-prescribed minimum hourly wage; current federal law sets the minimum at $5.15, while New York law sets the minimum at $6.75. See Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 206(a)(1)*; *N.Y. Labor Law § 652(1)*. Provided certain conditions are satisfied, however, an employer may "pay tipped employees an hourly rate less than the federal minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage." n5 *Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002)* ("New Silver Palace I"). Under federal law, an employer is eligible for this "tip credit" if (1) the employer has informed the tipped employee of statutory requirements related to the [*9] tip credit; and (2) "*all* tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *29 U.S.C. § 203(m)* (emphasis added) n6; see *New Silver Palace I 246 F. Supp. 2d at 228*. These prerequisites should be "strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage." *Id. at 229*. Though New York state requirements are not structured identically, state law similarly allows employers to take a tip credit, see *New York Labor Law §*

*652(4)*; *N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.4*, but prohibits them from retaining for themselves any portion of employees' tips, see *New York Labor Law § 196-d* n7 (Unlike federal law, however, New York law prohibits employers from retaining tips for themselves regardless of whether the employer takes a tip credit.) n8

n5 A "tipped employee" is an employee "engaged in an occupation in which he [or she] customarily and regularly receives more than $30 a month in tips." *29 U.S.C. § 203(t).*

[*10]

n6 *Section 203(m)* provides in relevant part:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to-
(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under *section 206(a)(1)* of this title. The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

n7 Both federal and state law establish a maximum amount that employers relying on a "tip credit" may deduct from the hourly statutory minimum. Put differently, the law establishes a minimum amount that employers must pay tipped employees in regular hourly wages, regardless of how much employees make in tips. See 29 U.S.C. § 203(m); New York Labor Law § 652(4); New Silver Palace I, 246 F. Supp. 2d at 228; Davis v. B & S, Inc., 38 F. Supp. 2d 707, 711 n.4 (N.D. Ind. 1998). These requirements are not at issue here.

[*11]

n8 New York Labor Law § 196-d provides:

No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. This provision shall not apply to the checking of hats, coats or other apparel. Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

Not all supplemental payments for service, however, count as "tips" for purposes of the foregoing provisions. Most importantly for present purposes, the payment ordinarily must be an optional "gift [*12] or gratuity" in order to be legally considered a "tip" for purposes of the FLSA. 29 C.F.R. § 531.52 ("A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him . . . . Whether a tip is to be given, and its amount, are matters determined solely by

the customer . . . .") n9 A similar understanding exists under New York law. See, e.g., Weinberg v. D-M Rest. Corp., 53 N.Y.2d 499, 506-07, 426 N.E.2d 459, 442 N.Y.S.2d 965 (1981) ("As to the employer the test generally is whether the payment is a 'service charge' exacted by the employer or a voluntary payment by the patron to the employee . . . 'A tip is in law, if not always in fact, a voluntary payment,'" quoting Beaman v. Westward Ho Hotel Co., 89 Ariz. 1, 4-5. 357 P.2d 327 (1960)). Other factors affecting whether a service payment is a tip may include the method of distributing the payment, the customer's understanding of the payment, and the employer's inclusion of the payment in its gross receipts. See Reich v. ABC/York-Estes Corp., 1997 U.S. Dist. LEXIS 6874, 91 Civ. 6265 (BM), 1997 WL 264379, at *5-*7 (N.D. Ill. May 12, 1997) (holding that five-dollar payments for "table dances" [*13] at an exotic dance club were "tips," despite the fact that they were fixed minimum payments, because the payments were made directly to the dancers rather than as a portion of a payment made to the employer, and because the employer did not include the payments in its gross receipts). n10

n9 See also Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1177 (7th Cir. 1987) ("The plaintiffs concede that the service charge is not a tip, since it is not discretionary with the customer."); United States v. Conforte, 624 F.2d 869, 874 (9th Cir. 1980) (observing that an "essential element" of a tip is that it is a "voluntary payment in an amount, and to a person, designated by the customer"); Matson v. 7455, Inc., 98 Civ. 788 (HA), 2000 WL 1132110, at *5-*6 (D. Or. Jan. 14, 2000) (finding that the definitions in 29 C.F.R. § § 531.52 and 531.55 "make it abundantly clear that the fixed fees collected by the plaintiff in exchange for table dances are not 'tips'"); United States v. Indianapolis Athletic Club, Inc., 818 F. Supp. 1250, 1253 (S.D. Ind. 1993) ("The discretion to refuse payment is an essential element of a tip or gratuity."); Rests. & Patisseries Longchamps v. Pedrick, 52 F. Supp. 174, 174-75 (S.D.N.Y. 1943) ("The word 'tip' is defined in Funk & Wagnalls' New Standard Dictionary as 'a sum of money given, as to a servant usually to secure better or more prompt service.' This connotes a voluntary act. A patron in a restaurant is under no compulsion to leave a 'tip.'").

[*14]

n10 The Court need not decide whether a payment must in all circumstances be optional or voluntary in order to constitute a tip under the

FLSA and New York law. As noted above, at least one case holds that a mandatory minimum fee may be a tip under federal law. See *id. 1997 U.S. Dist. LEXIS 6874, [WL] at \*5-\*6.* It is clear, however, that a mandatory fee will only be deemed a tip in unusual circumstances. See cases cited supra note 9.

Where service payments are not tips, they are not subject to the tip-credit restrictions imposed by federal and state law. Federal regulations provide that "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]," and that where all or part of such "service charges" are distributed to employees, such payments "may be used in their entirety to satisfy the monetary requirements" of the federal minimum wage law. *29 C.F.R. § 531.55(b).* Thus, an employer may retain a portion of an employee's tips without running afoul of *29 U.S.C. §§ 203* and *206*, so long as [\*15] the compensation received by the employee from regular hourly wages and compulsory service charges exceeds the minimum amount specified in *§ 206(a).* Under New York law, the provisions restricting employers from retaining employees' tips do not preclude employers from retaining part of a service fee added to the patron's bill, as long as the fee is a fixed charge and not a tip. *N.Y. Labor Law § 196-d*; see *D-M Rest. Corp., 53 N.Y. 2d at 506-07* n11.

> n11 The legal rules reflect a diversity of cultural expectations about how restaurant wait-staff should be compensated. For the most part, American practice reflects a tradition by which waiters and similar employees may be paid relatively low wages; prices to customers are thus lowered by the reduction in the owners' labor costs, and the staff is paid additional sums (based presumably on quality of service) directly by the customers. In the European tradition, customers pay a fixed amount for service directly to the establishment (whether included in the gross price of the food or added as a separate fixed charge), and the waiters are compensated by higher wages from the employer. See, e.g., Laura Bly, The Tipping Point, USA Today, Aug. 26, 2005 at 1D; Steven A. Shaw, Op-Ed., Tipped Off, N.Y. Times, Aug. 10, 2005, at A21. New York and federal minimum wage laws allow for either system.

[\*16]

Plaintiffs allege that defendants violated these provisions by retaining a portion of the service fees--which plaintiffs characterize as "tips"--that were added to the bill for banquets and large parties. Whether plaintiffs are correct depends on whether the service fees added to banquet bills are properly understood as "tips" belonging to employees or "service charges" belonging to the employer. *29 C.F.R. § 531.55.* If the banquet service fees were "tips," federal law prohibited defendants from retaining any portion of them if defendants also relied on the "tip credit" to satisfy the minimum wage. *29 U.S.C. § 203(m).* Under state law, defendants were barred from collecting a portion of plaintiffs' tips or ("gratuities") no matter how the minimum wage requirement was satisfied. *N.Y. Labor Law § 196-d.*

B. Plaintiffs' Claims Regarding Banquet Service Fees at 88 Palace

To demonstrate that the banquet fees at 88 Palace were "tips" and not "service charges," plaintiffs point to deposition testimony in which, according to plaintiffs, defendants conceded that the fees were optional. Plaintiffs also note that the [\*17] 88 Palace menus, as well as internal company documents, described the fees as "tips"; that the fees were never included in 88 Palace's gross receipts or total sales; and that 88 Palace did not pay taxes on the fees. Citing various inconsistencies in defendants' arguments regarding their accounting and payment practices, plaintiffs also suggest that the inconsistencies can be resolved only if the banquet payments are understood as tips belonging to the employees. None of the evidence cited by plaintiffs is decisive, however, and factual disputes about each of these issues make it possible for a reasonable fact-finder to reject any or all of plaintiffs' arguments.

1. Deposition testimony regarding the optional nature of the fees

Plaintiffs rely on the testimony of defendant Yeung Chao Lo, who, when asked whether "the 15 percent that is added is optional, based on the quality of the service . and other factors," answered, "That's right." (Yeung Chao Lo Dep. 119:25 to 120:11.) Certainly, a reasonable fact-finder could decide that this testimony supports plaintiffs' claim. The testimony does not compel a ruling for plaintiffs, however. As defendants note, Yeung Chao Lo's testimony, [\*18] read as a whole, might be understood as indicating only that customers would sometimes pay less than the required amount *despite the fact that the fees were mandatory.* In other words, just as occasionally a disgruntled customer might refuse to pay the entire bill, a customer might refuse to pay the full service fee. Such customer protests do not make payment "optional" for purposes of determining whether a payment is a tip or a service charge.

Plaintiffs also cite the testimony of defendant Gui Yang, who testified that "of the tips [from banquets], 75

percent were shared by captain and waiters and the 25 percent was kept by the company as service charge." (Gui Yang Dep. 33:9-11.) Contrary to what plaintiffs allege, this ambiguous testimony is not a concession that "the banquet fees were really tips." (P. Mem. Summary Judgment ("P. Mem.") at 31.) It appears from the transcript that Gui Yang's use of the word "tips" may have been prompted by the attorney questioning him. More importantly, the defendant's testimony evinces a failure to distinguish properly between tips and service charges; according to Gui Yang, twenty-five percent of the "tips" were "service charge[s]." (Gui [*19] Yang Dep. 33:9-11.)

Defendants, moreover, have come forward with sufficient testimonial evidence of their own to create a genuine issue of material fact. Defendant Gui Yang, for example, referred to the banquet fees as "tips" but testified at his deposition that customers "have to pay" the fee in the amount of fifteen percent of the bill. (Gui Yang Dep. 18:6-7.) And plaintiff Wei Chao Tan repeatedly conceded at his deposition that customers were "required" to pay the banquet fees, though he also referred to the payments as "tips." (Wei Chao Tan Dep. 11:11 to 12:20.) When considered in light of other evidence in the record, the testimony cited by defendants suffices to defeat plaintiffs' claim that alleged concessions in defendants' testimony eliminate any genuine issue of material fact regarding whether the fees were optional.

2. The use of the word "tips" on menus and corporate documents

Plaintiffs make much of the fact that the 88 Palace menus and internal company documents refer to the banquet service fees as "tips," and a reasonable fact-finder could find that this evidence weighs in plaintiffs' favor. But as plaintiffs concede elsewhere in their brief, the Court should [*20] not at this stage rely on mere "nomenclature" in determining whether a payment constituted a service charge or a tip (see P. Mem. at 38), particularly in light of the fact that a reasonable lay person or restaurant professional might not even understand the difference between the two terms' legal definitions. (See Miu Dep. 68:21 to 69:4.)

In any event, much of the evidence on which plaintiffs rely is much more ambiguous than they would have the Court believe. Plaintiffs argue, for example, that "88 Palace's corporate witness, Gui Yang, conceded that the menus describe the banquet fees as 'tips'" (P. Mem. at 29.) The cited portion of the deposition, however, lends only equivocal support to that claim. Gui Yang agreed that the menu says "tips," but he also pointed out that the menu says "that [customers] have to pay additional 15 percent tips." (Gui Yang Dep. 18:6-7 (emphasis added).) In response to a follow-up question, he added: "That's for

customers so that they understand they have to pay the 15 percent *service charge*." (Id. at 18:9-11 (emphasis added).) Moreover, the word appearing on the menu is not actually the English word "tips," but a Chinese character [*21] which apparently means "tips." (Id. at 19:5-8; see 88 Palace Mem. Opposition and Cross-Motion for Summary Judgment ("88 Palace Mem.") at 7-8; see also 88 Palace Response to P. Local R. 56.1 Statement at P11.) Distinguishing between the terms "service charge" and "tip" causes confusion even in English, and the difficulty of translation from Chinese can only exacerbate the problem. (See also id., arguing that the Chinese character for "tip" "may be subject to varying interpretations.") n12 Plaintiffs do not provide sufficient assurance that the Chinese character that witnesses translated as "tips" carries the same meaning and connotations that distinguish the English word "tip" from "service charge." n13

n12 See also the deposition of plaintiff Shing Tao Au, in which he explained that the term "service charge" was new to him, and that he interpreted it to mean "tips." (Shing Tao Au Dep. 25:25 to 26:14.) "Service charge is tips," he said. (Id. at 26:14.)

n13 Citing several advisory letters from the New York Department of Labor, plaintiffs also argue that "if a patron is told that a fee is a tip, or a gratuity, the fee collected must be paid in full to the tipped employees." (P. Mem. at 30.) The letters do in fact provide that any fees that the employer "specifically denominate[s] as a 'gratuity'" must be paid to the tipped employees. But the letters do not specifically refer to the word "tip"; much less do they refer to the Chinese character which witnesses in the instant case have translated as "tip." Moreover, when read as a whole, the letters appear to be concerned not primarily with the details of word choice, but with the impression created in the customers' minds. (See, e.g., Letter from N.Y. Dep't of Labor (Mar. 26, 1999), providing that if the employer "lead[s] the patron who purchases a banquet . . . to believe that the contract price includes a fixed percentage as a gratuity, then that percentage of the contract price must be paid in its entirety to the waiters, busboys and 'similar employees.'"; Cheffo Decl. Ex. 50.) An employer might therefore be in compliance with the law as interpreted by these letters, even if it uses the word "gratuities" on the menu, so long as the restaurant's procedures or policies make clear to customers that the banquet service fees are charges belonging to the employer. To the extent the Department of Labor letters can be

read as requiring that all payments ever designated "gratuities" on a menu be treated in all circumstances as "tips" or "gratuities" for purposes of New York minimum wage requirements, the letters may do note cite any statute or regulation to support that position.

None of this is to say, of course, that the use of the Chinese character for "tips" must be irrelevant to a reasonable fact-finder. The Court only holds that 88 Palace's choice of words on its Chinese menus does not, in light of other evidence, justify summary judgment in plaintiffs' favor.

[*22]

The use of the word "tip" on 88 Palace's internal financial worksheets weighs more heavily in favor of plaintiffs' claims, not only because the word appears in English, but also because some of the documents clearly distinguish between service charges and tips, and describe employees' portion of the banquet fees as "75% Tips Paid." (Cheffo Dec. Ex. 20.) Though the Court agrees with plaintiffs that this evidence seriously undercuts defendants' contention that the entire banquet fee was a "service charge," in light of the conflicting evidence offered by defendants the internal worksheets are not enough, either alone or taken with other available evidence, to entitle plaintiffs to summary judgment.

3. The failure to report the payments as part of gross receipts

The gross-receipts issue presents a more difficult question. Relying primarily on district court opinions from Texas and Illinois, plaintiffs argue that in order to establish that the banquet fees were "service charges," 88 Palace must demonstrate that it reported the entire party fee to the government as part of the restaurant's gross receipts. See ABC/York-Estes Corp., 1997 U.S. Dist. LEXIS 6874, 1997 WL 264379, at *5-*6; Reich v. Priba Corp., 890 F. Supp. 586, 595 (N.D. Tex. 1995) [*23] Plaintiffs present evidence that 88 Palace not only failed to include the banquet fees when reporting gross receipts to the government, but also that defendants grossly understated their gross receipts in government reporting more generally. Defendants, in response, argue that the law only requires that employers include service charges in internal calculations of gross receipts in order to avoid that they be classified as tips; the FLSA, defendants argue, does not impose a *tax reporting* requirement on service charges.

The district court opinions on which plaintiffs rely contain language supporting their argument. In Priba Corp., the district court considered whether payments made to topless dancers for "table dances" at an adult entertainment club constituted "tips" for purposes of the

FLSA, and concluded that "the fact that all of the table dance fees [were] not reported as gross receipts [was] fatal to [defendants'] claim that the tips [were] more properly classified as wages." 890 F. Supp. at 595. In another case involving table dances at an adult entertainment establishment, an Illinois district court adopted the Priba Corp. analysis, and held [*24] that "an employer must include payments in its records as gross receipts as a prerequisite to 'service charge' classification under the FLSA." ABC/York-Estes Corp., 1997 U.S. Dist. LEXIS 6874, 1997 WL 264379, at *5, *7. The Court ruled against the defendants in ABC/York-Estes Corp., noting that there was "no indication in the record that the table dance fees [were] reported in defendants' gross receipts." Id. 1997 U.S. Dist. LEXIS 6874, [WL] at *7.

Even if the *Priba Corp.* and ABC/York-Estes Corp. holdings were binding on this Court, however, their facts are sufficiently distinct from the facts of the instant case that they would not compel a ruling for plaintiffs.

First of all, the courts in Priba Corp. and ABC/York-Estes Corp. did not rely exclusively on the failure to report the payments as gross receipts in concluding that the payments were service charges rather than tips. Several other factors militated in favor of a finding that the payments were not service charges belonging to the employer, but rather tips belonging to the employee. In Priba Corp., for example, the patrons made the table dance payment directly to the dancers; the dancers kept the entire amount if paid in cash, defendants [*25] kept *no* record of the number of dances or the amount of table dance payments earned; and there was an express agreement between dancers and the employer that "'Priba shall have no right to any portion of cash sales or tips received,'" and that Priba would retain only a twenty per cent processing fee for payments made by credit card or voucher. *Priba Corp.*, 890 F. Supp. at 594-95. In ABC/York-Estes Corp., patrons also made the table dance payments directly to the employees; the employees were under "no obligation" to remit the payments to the employer, other than a fixed "shift fee" which did not vary in relation to the number or duration of table dances; and the employer did not keep a record of the table dance fees collected or of the number of table dances performed. ABC/York-Estes Corp., 1997 U.S. Dist. LEXIS 6874, 1997 WL 264379, at *5-*7. Thus, in these cases, the moneys paid to the dancers were not only not *reported* to the government as part of the gross receipts of the employer; they never even became part of those receipts, because for the most part they were received and retained by the dancers.

Here, in contrast to both *Priba Corp.* and *ABC/York-Estes* [*26] Corp., customers paid the banquet fees as a portion of a larger payment made to the employer, and employees were not given any personal control over their

portion of the fee until the *employer* paid it to them. Moreover, despite 88 Palace's apparent failure to fully report the payments to the government, the parties agree that defendants maintained meticulous records of the amount of banquet service fees paid to the employer as part of the bill, which suggests that the employer considered the charges to be payments belonging to the business, rather than tips belonging to employees. (See 88 Palace Mem. at 6; P. Mem. at 33.)

Finally, despite language in Priba Corp. and ABC/York-Estes Corp. suggesting that employers must include service charges in their reporting of gross receipts in order to avoid a finding that the fees are "tips," nothing in either opinion suggests that the courts would apply that general rule to a case in which a defendant's failure to report service payments was just one part of a more generalized failure to comply with tax reporting requirements. In the absence of any indication to the contrary in the courts' opinions, it seems reasonable to assume [*27] that the defendants' reporting failures in both Priba Corp. and ABC/York-Estes Corp. were specific or unique to the table dance payments at issue. Here, in contrast, the Court is not confronted with a defendant who allegedly reported all of its income except the banquet fee; rather, 88 Palace appears simply to have failed to report its income properly, and there is nothing to suggest that the restaurant treated the banquet service fees differently from other unreported or under-reported payments that were unquestionably non-tip income belonging to the employer. (See id., noting that "only about one of every two dollars collected by 88 Palace, *from any source*, is included in its gross receipts and reported to the government" (emphasis added).) To the extent that the restaurant may simply have been cheating the government of taxes by failing to report receipts that were clearly income of the employer, the failure to report the banquet service fees as part of gross receipts does not compel the conclusion that the fees were tips for purposes of the FLSA. n14

> n14 For substantially the same reasons, the Court rejects the argument -- which plaintiffs make only in passing -- that defendants' failure to comply with other federal tax reporting and withholding requirements compels a ruling in plaintiffs' favor. If defendants failed to account for service fees in tax reporting and withholding, that may suggest that the fees were tips, but it may also suggest that defendants simply violated the tax laws. It is up to the fact-finder to determine the proper explanation for the alleged reporting deficiencies.

[*28]

The Court stresses, however, that a fact-finder could reasonably conclude that 88 Palace's failure to include banquet fees when reporting gross receipts undermines its claim that the fees were service charges. See *Heng Chan v. Triple 8 Palace, 2005 U.S. Dist. LEXIS 16520, 03 Civ. 6048 (JCF), 2005 WL 1925579, *8 (S.D.N.Y. Aug. 11, 2005)* ("There is substantial evidence that the 88 Palace Restaurant treated the additional charges imposed on banquet customers as employee tips rather than as a service charge belonging to the restaurant. For example, these monies were not reported in 88 Palace's gross receipts nor were they included as wages in the employees' W-2 tax forms."). If the banquet fees were truly service charges, they should have been included in the restaurant's gross receipts for accounting and tax purposes. If they were not, that is circumstantial evidence that defendants did not actually regard the fees as service charges, but rather as tips. That, however, is a factual inference (and, moreover, one that is arguably weakened by the fact that defendants' reporting of *other* receipts may also have been lacking), not a rule of law, and it is left to the fact-finder to resolve. Even if the [*29] evidence in favor of plaintiffs is "substantial," id., plaintiffs have failed to demonstrate the absence of a genuine issue of material fact. n15

> n15 In support of their gross-receipts argument, plaintiffs also cite, but do not discuss, *Bonham v. Copper Cellar Corp., 476 F. Supp. 98 (E.D. Tenn. 1979)*, and *Melton v. Round Table Restaurants, Inc., 1971 U.S. Dist. LEXIS 10887, Civ. 14112 (Smith), 1971 WL 900 (N.D. Ga. Nov. 8, 1971)*. While the latter decision contains dictum supporting plaintiffs' argument regarding gross receipts, the case is distinguishable for essentially the same reasons that distinguish Priba Corp. and ABC/York-Estes Corp. See *Melton, 1971 U.S. Dist. LEXIS 10887, 1971 WL 900, at *4*. Bonham presents an entirely different factual scenario and provides no support to plaintiffs' gross-receipts argument. See *Bonham, 476 F. Supp. at 100-02*.

Federal regulations do not undermine this holding. In providing examples of payments that are not tips, the regulations explain that "service [*30] charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of" the FLSA. *29 C.F.R. § 531.55*. The regulations do not purport to create a rule, however, that any sum given to a tipped employee that is not included in reported gross receipts must always be considered a tip. Service charges taken in by the employer may "become part of the employer's gross receipts" for purposes of *29 C.F.R. § 531.55*, even if they

are not *reported* as such on the employer's tax returns. The regulations may not be reasonably read as providing that a restaurant employer who generally fails to properly report gross receipts is liable to a finding that any and all unreported payments to employees are "tips." n16

> n16 Though plaintiffs' allegations--as well as some evidence in the record--present the possibility that 88 Palace and Triple 8 violated certain laws related to overtime pay, tax reporting, and other accounting practices, see, e.g., Parts I.B.3, I.B.4, I.D.3, and I.D.4, the Court need not and does not address whether such violations actually occurred. The Court notes only that *if* such violations occurred, they might explain some of the evidence on which plaintiffs attempt to rely to demonstrate violations of the minimum wage requirements set forth in *29 U.S.C. §§ 206(a)* and *203(m)* and New York State Labor Law *§ 196-d*.

[*31]

4. Inconsistencies in defendants' arguments regarding accounting and payments

Plaintiffs point to various inconsistencies in defendants' arguments regarding accounting and payment practices, and suggest that the inconsistencies can only be resolved if the banquet fees are understood as tips.

Defendants' representations regarding overtime pay present one example. Defendant Gui Yang testified that when paying one-and-a-half times the regular pay to employees working over forty hours, as required by *29 U.S.C. § 207(a)*, 88 Palace calculated the overtime pay by using the $ 3.30 hourly wage as the "base" pay, leading to an overtime pay of $ 4.95 per hour (Gui Yang Dep. 85:18 to 88:10 ); see *29 U.S.C. § 207(a)* ("No employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed "); id. *§ 207(e)* (defining "regular rate" as "*all* remuneration for employment paid to, or on behalf of, the employee," with the exception [*32] of certain forms of payment specifically defined in the statute, such as gifts, end-of-year bonuses, and stock options (emphasis added)). In other words, 88 Palace did not include the banquet service charges as part of the "regular rate" subject to increase for overtime. In their summary judgment brief, however, defendants insist that a proper calculation of plaintiffs' hourly wages *would* include the service charge payments distributed to employees (88 Palace Mem. at 8-11.) Defendants do not explain how they can avoid calculating overtime based on a regular rate that

excludes the service charge payments if those payments are properly considered part of the hourly wage. n17

> n17 Furthermore, despite defendants' insistence in their brief that the service charges distributed to plaintiffs formed part of the wages, a witness designated by defendants pursuant to *Fed. R. Civ. P. 30(b)(6)*, Louis Miu, stated precisely the opposite at his deposition. "The part of the service charge that you give out to the employees," Miu explained, "is not considered as wages." (Miu Dep. 110:9-13.) Later in the deposition, Miu admonished that the attorney questioning him was "confusing service charges with the wages now; they are not to be confused." (Id. at 125:25 to 126:3.)

[*33]

The 88 Palace defendants also present inconsistent arguments regarding whether they took advantage of the "tip credit" to satisfy their obligations under federal and state labor law. In their summary judgment papers, the 88 Palace defendants dispute that they had any need for the tip credit, because if the service charges are understood as wages, plaintiffs receive above minimum wage even without tips. (See id. at 10-11.) Defendant Gui Yang's testimony, however, contradicts this representation. When asked at his deposition how the company could pay $ 3.30 per hour to waiters and busboys and $ 3.70 per hour to captains even though the minimum wage was $ 5.15, Gui Yang explained: "Because their income includes tips, they earned tips, and when one adds tips to their pay it exceeds the minimum." He added: "The company only pay the base pay and the rest they made from tips." (Gui Yang Dep. 86:5-7, 87:7-8.)

The inconsistencies highlighted by plaintiffs certainly bolster their case, both by suggesting strongly that defendants considered the banquet service payments to be tips, and by generally impeaching the credibility of defendants' arguments. The inconsistencies do not, however, [*34] show the absence of any issue of material fact, even when considered with the other evidence in plaintiffs' favor. First of all, though it would seem odd to establish a defense to one claim by conceding violation of a separate statutory provision, it is possible that the overtime issue can be explained simply by defendants' failure to comply with overtime laws, just as defendants' failure to report the banquet fees could be explained by a violation of tax reporting requirements. See supra Part I.B.3. Moreover, inconsistencies or confusion in witness testimony might result from the difficulty--particularly for lay persons and non-native speakers of English--of distinguishing between "tips" and "service charges."

Thus, when Gui Yang explained that "the company only pay[s] the base pay and the rest they made from tips," his statement could be taken as reflecting confusion as to what constitutes a "tip"--or even confusion regarding what constitutes "base" pay--rather than a concession that 88 Palace needs to rely on the tip credit to satisfy minimum wage laws.

Unquestionably, the evidence discussed here and in the preceding subsections raises serious doubts about the plausibility [*35] of defendants' arguments. Summary judgment, however, is not warranted unless *no* reasonable fact-finder could reach a contrary result. See *Magan v. Lufthansa German Airlines, 339 F.3d 158. 161 (2d Cir 2003)* If all reasonable inferences are drawn in favor of the 88 Palace defendants, it cannot be said that they have failed to raise a genuine issue of material fact about the nature of the banquet fees. n18

> n18 This is particularly so in light of plaintiffs' failure to demonstrate conclusively that the banquet service fees were voluntary and optional. The optional nature of a payment is ordinarily of central importance in determining whether the payment is a tip. See cases cited supra note 9 In view of plaintiffs' inability to show an absence of material fact with regard to that issue, the other evidence in the record--regarding internal company documents, gross receipts, and other matters--would have to be particularly compelling to justify a ruling at the summary judgment stage that the banquet fees were tips. While the additional evidence provides some support to plaintiffs' argument, it does not overcome their failure to show the absence of a genuine issue of material fact about whether the fees were voluntary.

[*36]

C. 88 Palace's Claims Regarding Banquet Service Fees

The 88 Palace defendants also seek summary judgment on the issue of the banquet service fees, arguing that the fees, as a matter of law, should be considered service charges belonging to the restaurant. The Court need not address 88 Palace's arguments in quite the same detail as it addressed plaintiffs' motion for summary judgment on the same question, because the preceding subsections already set forth much of the evidence that supports plaintiffs' claims and that thereby creates a genuine issue of material fact. 88 Palace defendants, for example, have referred to the fees as "tips" on menus and in corporate documents, and they have failed to report the fees as part of their gross receipts. Moreover, the finder of fact will be entitled to draw an adverse infer-

ence against 88 Palace based on defendants' destruction of documents that may have shown that defendants treated the service fees as tips. See *Triple 8 Palace, 2005 U.S. Dist LEXIS 16520 2005 WL 1925579, *9-*10.* n19 Under these circumstances, defendants' motion for summary judgment demonstrates more bravado than merit

> N19 Magistrate Judge Francis held that the "most appropriate sanction" for the destruction of evidence in this case "is to allow the finder-of-fact to consider the gravity of defendants' conduct, the materiality of the evidence that was lost, and the import of the remaining proof, and to draw an adverse inference against the defendants." *Id. 2005 U.S. Dist LEXIS 16520, [WL] at *10.*

[*37]

None of the arguments in 88 Palace's brief compel a different conclusion Defendants cite the deposition testimony of plaintiff Feng Qin Zheng Tang to support the proposition that the banquet service fees were mandatory, but the testimony establishes no such thing. On the contrary, when asked whether banquet customers could refuse to pay the fifteen percent fee, the plaintiff responded, "Some will." (Feng Qin Zheng Tang Dep. 72:16-19.) To demonstrate that the charges belonged to the employer, defendants rely on defendant Hang Li's testimony that service charges were paid directly to him, and not to the employees. (Hang Li Dep. 33:12-20.) Another witness provided by defendants, however, testified that the portion of service charge payments made to employees was paid out to them "immediately." (Miu Dep. 122:5-8.) n20

> n20 88 Palace also offers evidence that the fifteen percent fee was discussed with customers before banquets, arguing that "a restaurant typically does not discuss an optional 'tip' with its customers prior to the occasion." (88 Palace Mem. at 5.) The Court agrees that this is not "typical[]," but that is not, of course, the standard for summary judgment

[*38]

The 88 Palace defendants also argue that so long as plaintiffs' total compensation, including tips, exceeded the statutory minimum wage, when measured by a weekly standard, plaintiffs cannot establish a violation of *29 U.S.C. § § 203(m)* or *206(a)* Such a rule cannot be reconciled with the language of *§ 203(m),* which clearly prohibits employers from confiscating *any* portion of

employees' tips if the employers rely on the tip credit to satisfy the minimum wage. Courts have consistently rejected arguments similar to defendants' for precisely this reason. See, e g , *Reich v. Chez Robert 28 F 3d 401, 404 (3d Cir 1994)* (holding that the requirements of § *203(m)* may not be waived by the district court to account for compensation actually received in the form of tips); *Martin v Tango's Rest, Inc., 969 F 2d 1319, 1323 (1st Cir 1992)* ("It may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements Yet Congress has in *section 3(m)* expressly required notice as a condition [*39] of the tip credit "); *New Silver Palace I 246 F Supp 2d at 229* ("The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage "). The cases on which defendants rely for the contrary position are inapposite to the instant case, because none of them involved enforcement of § *203(m)* See *Adair v City of Kirkland, 185 F 3d 1055 (9th Cir 1999)*; *Rogers v City of Troy, 148 F 3d 52 (2d Cir 1998)*; *Hensley v MacMillan Bloedel Containers, 786 F 2d 353 (8th Cir 1986)*; *Dove v. Coupe, 245 U.S App D C 147 759 F 2d 167 (D C Cir 1985)*; *Blankenship v Thurston Motor Lines, Inc, 415 F 2d 1193 (4th Cir 1969)*; *Wirtz v. Hebert, 368 F 2d 139 (5th Cir 1966)*; *United States v Klinghoffer Bros Realty Corp 285 F 2d 487 (2d Cir 1960)*; *Caci v The Wiz of Lake Grove 267 F Supp 2d 297 (E D N Y 2003)*.

### D Plaintiffs' Claims Regarding Banquet Service Fees at Triple 8

As in their case against 88 Palace, [*40] plaintiffs attempt to prove that they are entitled to summary judgment against Triple 8 on the issue of whether the service fees collected at Triple 8's banquets were "tips " As in the case of 88 Palace, plaintiffs fail to demonstrate the absence of genuine issues of material fact

The arguments on which plaintiffs rely are similar to those they make in the 88 Palace case They argue that defendants have conceded in deposition testimony that the fees were optional; that internal company documents describe the fees as "tips"; that the fees were never included in Triple 8's gross receipts or total sales; and that inconsistencies in Triple 8's arguments undermine its claim that the fees in question were service charges While some of the evidence supports plaintiffs' position, they are not entitled to judgment as a matter of law.

1. Deposition testimony regarding the optional nature of the fees

Plaintiffs rely on deposition testimony of various witnesses to show that the banquet service fees were optional, but the testimony in question is ambiguous at best For example, although plaintiffs claim that defendant Kwok Ming Chan testified "that the party fees were variable," the cited [*41] portion of the testimony could just as easily be read as indicating that the service fee was a fixed mandatory minimum, and that customers would "sometimes" pay more when they were "very pleased " (Kwok Ming Chan Dep. 379 ) The fact that customers sometimes add an additional amount to a mandatory charge does not convert the entire charge into a tip Moreover, even though Kwok Ming Chan acknowledged that customers might pay more, he also maintained that the charge "was always 15 percent " (Id. at 378:23 to 379:4 )

Some of plaintiffs' testimony further calls into question whether the banquet service fees were optional Plaintiff Wan Zhen Jiang, for instance, testified that customers did not have a right not to pay the fifteen percent fee (Wan Zhen Jiang Dep 97:22-25.) Plaintiff Shing Tao Au's testimony, while more ambiguous, also suggests that the payments were mandatory (Shing Tao Au Dep 25:4-14 ) In light of the inconsistencies among (and within) the testimony of various witnesses, the Court cannot determine as a matter of law whether the service charges at Triple 8 Palace were compulsory or optional

2. The use of the word "tips" on corporate documents [*42]

As in the case against 88 Palace, plaintiffs rely on corporate financial information and other documents produced by the restaurant to demonstrate that the service fees formed part of plaintiffs' tips The evidence on which plaintiffs rely, however, is simply not clear enough to support summary judgment

Several of the documents cited by plaintiffs are not even written in English (see Cheffo Dec. Exs 40, 41; see also Kwok Ming Chan Dep 356:17-19), and thus present the same translation problems noted above, see supra Part I B 2 Moreover, plaintiffs have conceded, for purposes of their summary judgment motion, that the menus at Triple 8 Palace used the term "service charge" rather than "tip," at least beginning in 1997 (P Mem at 38.) Finally, though some of the English-language documents cited by plaintiffs describe plaintiffs' pay only in terms of wages and "tips," it is for the fact-finder at trial to determine whether this reflects carelessness and confusion in distinguishing "tips" and "service charges" (or failing to so distinguish) in official records and letters, or whether it reveals that defendants actually understood the payments to be tips and treated them [*43] as such in the course of business. (See Cheffo Dec. Ex 32.)

3. The failure to pay taxes on the payments or report them as gross receipts

Plaintiffs' reliance on Triple 8's alleged failure to comply with various reporting and tax requirements, including its failure to include the service fees in gross receipts, is not enough to warrant summary judgment, primarily for reasons already described in Part I.B.3, supra. Plaintiffs acknowledge that Triple 8's alleged violations of tax reporting requirements, like 88 Palace's violations, extended beyond its failure to include service charges in gross receipts. (See, e.g., P. Mem at 43.) Though plaintiffs believe that these reporting deficiencies weigh in their favor, this is not necessarily the case. If the Triple 8 defendants did not treat banquet service fees differently from other income that they may have improperly failed to report, the reporting failures with respect to the banquet payments need not support an inference that those payments were tips. Whether and to what extent defendants' reporting and accounting practices support plaintiffs' position is a question of fact for the jury, not a question of law to be [*44] determined by summary judgment

4. Inconsistencies in defendants' arguments regarding accounting and payments

Various inconsistencies and contradictions in plaintiffs' arguments and evidence undermine both defendants' credibility and the substance of defendants' arguments. Again, however, such evidence is for the fact-finder to weigh and is not enough to entitle plaintiffs to summary judgment against Triple 8.

Defendants' claim that the service fees were not tips is undermined, for example, by the fact that Triple 8 did not count service charge payments when calculating the overtime rate. A document attached to defendant Kwok Ming Chan's affidavit reveals that the overtime rate was $5.24, which is approximately 1.5 times a regular rate of $3.49 (Ming Dep. Ex. D.) Defendants do not explain how they could use $3.49 as the regular rate in an overtime calculation if plaintiffs' regular non-tip compensation, including their portion of the service fees, was well over that amount. It is possible, of course, that the service charges were not tips and that defendants were simply in violation of overtime laws. It is the duty of the fact-finder, however, to determine the proper explanation [*45] for the inconsistency.

Another inconsistency arises in the Triple 8 defendants' representations regarding the tip credit. In their summary judgment opposition, the Triple 8 defendants acknowledge that they relied on a "tip credit" to satisfy minimum wage laws, in accordance with *29 U.S.C. § 203(m)* and *New York Labor Law § 652(4)* (See Triple 8 Mem Opposition to Summary Judgment ("Triple 8 Mem ") at 9.) If defendants are correct that the service

fees did not count as "tips," however, then there was no reason for them to rely on the tip credit, because the total non-tip compensation to plaintiffs would have far exceeded the statutory minimum, at least according to the documents submitted by Triple 8. (See Affidavit of Kwok Ming Chang Ex. B.) Thus, either the service fees *were* indeed tips, contrary to defendants' representations, or defendants have misunderstood the law and relied unnecessarily on the tip credit. Though the former seems more likely at this stage, the evidence does not entitle plaintiffs to judgment as a matter of law. n21

n21 Relying on Indianapolis Athletic Club, defendants maintain that their retention of a portion of the payment provides evidence that it was not a tip. See *818 F. Supp. at 1253* ("The second factor which indicates that the disputed payments were wages is that the IAC did not convey the service charge directly to the wait staff without deduction."). Defendants' reasoning is circular, and would allow them to justify a violation of tip-sharing restrictions by engaging in the very activity that is prohibited. The court in Indianapolis Athletic Club did not need to consider this possibility, because that case did not involve a tip credit. Moreover, the positions in that case were reversed; the *plaintiff* was arguing that the payment at issue was a wage. *Id. at 1251*

[*46]

II. Sharing of Non-Banquet Tips

A. Legal Standard

Plaintiffs allege that in addition to retaining illegally a portion of the banquet service fees, both sets of defendants illegally retained some of the tips received by employees while the employees were working ordinary restaurant shifts, as opposed to banquet shifts.

At the outset it is important to clarify some possible confusion regarding who may and may not retain employees' tips under New York and federal law. Plaintiffs are correct that they are entitled to summary judgment on the state law claim if they establish as a matter of law that "employers" or employers' "agents" counted among those dipping into the tip pool, and that a similar standard applies under federal law if the employer took advantage of the tip credit. See *New Silver Palace I, 246 F. Supp. 2d at 221-22; Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 307-08 (S.D.N.Y. 1998)*. (Thus, with regard to the banquet service fees discussed in the preceding section, plaintiffs are correct that the employing restaurants' conceded retention of service fees was illegal if the fees

were actually tips.) It is unclear whether plaintiffs and [*47] defendants recognize, however, that the restrictions on tip sharing extend beyond "employers" and "agents." Read as a whole, the briefs of all three parties suggest an erroneous view that tip sharing by an "employer" or employer's "agent" is not only *sufficient* to demonstrate illegal tip sharing, but that it is *necessary* (See, e.g., P. Mem at 45; Triple 8 Mem at 19, 23; P Mem. Reply to Triple 8 at 13; 88 Palace Mem at 13-14, 16; P. Mem. Reply to 88 Palace at 20-21.) However, both New York law and the FLSA provide somewhat broader protections.

The FLSA provides that if an employer takes advantage of the tip credit, "all tips" received by an employee must be retained by that employee, or, if shared by means of a tip pool, the tips must only be shared "among employees who customarily and regularly receive tips." *29 U.S.C. § 203(m).* In other words, employers are not merely barred from taking the tip credit if *they* share in the tip pool, but they are barred from taking the tip credit if *any person* who does not "customarily and regularly receive tips" shares in the tip pool. Id.; see *Kilgore v Outback Steakhouse of Fla., Inc., 160 F.3d 294, 300 (6th Cir. 1998)* [*48] (noting that *29 U.S.C. § 203(m)* "only permits tip pooling among employees who customarily and regularly receive tips" (citation and internal quotation marks omitted)); *Lixin Zhao v. Benhana, Inc., 2001 U.S. Dist. LEXIS 10678, 01 Civ 1297 (KMW), 2001 WL 845000, at *1-*2 (S.D.N.Y May 7, 2001)* (holding, in a dispute regarding notice to potential class members, that plaintiff had sufficiently alleged a violation of *29 U.S.C. § 203(m),* where plaintiff alleged that she was required to share her tips with "kitchen helpers"); *Davis v B & S. Inc., 38 F. Supp. 2d 707, 714-15 (N.D. Ind. 1998)* ("The employer may still take advantage of the tip credit for employees who participate in a tip pooling agreement, so long as those employees are employees who 'customarily and regularly receive tips,'" quoting *29 U.S.C. § 203(m).*); *Letter from Dep't of Labor, Wage and Hour Div. (Nov. 4, 1997), 1997 DOLWH LEXIS 55, 1997 WL 998047* ("The FLSA requirement that tipped employees retain all tips does not preclude a valid[] tip-pooling arrangement among employees who customarily and regularly receive tips. . . Waiters, bellhops, waitresses, countermen, [*49] busboys, and service bartenders are among those who may participate in a tip pool. . . . An employer will lose the benefit of the exception from the tip-retention requirement if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips, such as janitors, dishwashers, chefs, or laundry room attendants.") n22

n22 Under one reading of the statute, a person who regularly shares in a tip pool is, by defi-

nition, a person who "customarily and regularly receives tips." However, to the extent this reading would allow workers to become eligible for tip sharing simply by taking money from the tip pool, the restriction on tip sharing would become utterly meaningless. To avoid this circular reasoning and absurd result, the Sixth Circuit interpreted *29 U.S.C. § 203(m)* as requiring that individuals sharing in a tip pool be "tipped employees" as defined in *§ 203(t).* That is, they must not only "customarily and regularly" receive tips, but they must be *"engaged in an occupation in which* [they] customarily and regularly receive[] tips." *§ 203(t)* (emphasis added); see *Kilgore, 160 F.3d at 301.* In Kilgore, the court held that hosts at Outback restaurant satisfied *§ 203(t)*'s requirement because their occupation was one involving frequent interaction with customers in an industry in which undesignated tips were common. Id. at 301; see also *Myers v. Copper Cellar Corp., 192 F.3d 546, 550-51 (6th Cir. 1999)*; cf. *Dole v Cont'l Cuisine, Inc., 751 F. Supp. 799, 803 (E.D. Ark. 1990)* (holding that a worker who is not an "employer" and who is "the type of employee who customarily receives tips" may participate in a tip pool); *Bonham v. Copper Cellar Corp., 476 F. Supp. 98, 101 (E.D. Tenn. 1970)* ("The second relevant precondition to reliance upon the tip credit is that the tipped employees must be permitted to retain all tips except for pooling with other *tipped employees* " (emphasis added)). Though this Court rejects a circular reading of *§ 203(m)* under which anybody who takes from a tip pool thereby becomes eligible to do so, it need not determine at this stage whether to adopt the Kilgore court's reading of the statute or some alternative interpretation.

[*50]

Similarly, New York law provides that "no employer or his agent or an officer or agent of any corporation, *or any other person* shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." *N.Y. Labor Law § 196-d* (emphasis added). The statute provides an exception for "sharing of tips by a waiter with a busboy or similar employee." Id. n23 Though plaintiffs appear to grasp the breadth of this provision in one section of their opening brief (see P. Mem. at 46-47), their arguments read as a whole suggest an erroneous view that they *must* demonstrate that individuals sharing tips were employers or agents of employers in order to prevail on their tip-sharing claim (See, e.g., P. Mem. Reply to Triple 8 at 13; P Mem. Reply to 88 Palace at 20-21.) n24

n23 Like *29 U.S.C. § 203(m)*, see supra note 22, *New York Labor Law § 196-d* is susceptible to interpretations that could frustrate its clear purposes. Read narrowly, for example, the provision might seem to bar employees receiving tips from sharing those tips with other employees who receive tips if the other employees are not "busboy[s] or similar employee[s]." This might mean that if waiters are not considered "similar" to busboys, then waiters may not even share tips with each other. See *§ 196-d* (allowing tip sharing "by waiters with busboys" but making no mention of tip sharing among waiters). Because such an interpretation would undermine the statute's manifest purpose to allow tip pooling, the Court rejects it. Rather, the Court reads "similar employee" in the phrase "sharing of tips by a waiter with a busboy or similar employee" as referring not only to employees similar to busboys, but also employees similar to waiters. Cf. *New Silver Palace I 246 F. Supp. 2d at 229* ("'A host or greeter may be eligible for Tip Sharing . . .'" (quoting *People v. Ngan Gung Corp.*, No 402708/95, at 4 (N.Y. Sup. Ct Nov 13, 1995) (slip opinion)))

[*51]

n24 Moreover, even in portions of plaintiffs' briefs in which they appear to argue their case under a broader standard, they still fail to apply the *correct* standard. In their opening brief for example, plaintiffs argue that "owners and managers" at Triple 8 improperly shared in the tip pool, which suggests a recognition that the workers need not be "employers" in order for the tip-sharing restrictions to apply. However, the focus of the inquiry under federal law is not whether the individuals are properly considered "owners and managers," but whether they are engaged in an occupation in which they "customarily and regularly receive tips." *29 U.S.C. § 203(m)* The fact that a worker is a manager may be relevant to that inquiry, but it is not necessarily dispositive.

To the extent plaintiffs *choose* to rest their claims under *29 U.S.C. § 203(m)* and *New York Labor Law § 196-d* on the allegation that individuals sharing in the tips were "employers" or "agents" of employers, they must demonstrate that the individuals may [*52] properly be characterized as such. The test for determining whether an individual qualifies as an "employer" is the same under the FLSA and New York Labor Law. See

*Chung v. New Silver Palace Rest.*, *272 F. Supp. 2d 314, 318 n.6 (S.D.N.Y. 2003)* ("New Silver Palace II"); cf. *Jankowski v. Castaldi*, *2006 U.S. Dist. LEXIS 4237, 01 Civ 0164 (SJF) 2006 WL 118973, at *8 n.5 (E.D.N.Y. Jan. 13, 2006)* (noting that New York's definition of "employer" is as broad as the FLSA's) "The overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs. Ltd.*, *172 F.3d 132, 139 (2d Cir. 1999)*, quoting *Goldberg v. Whitaker House Coop.*, *366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)* (additional citation omitted). The "economic reality" test looks to whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."*Id.*, quoting *Carter v. Dutchess Comm. Coll.*, *735 F.2d 8, 12 (2d Cir. 1984)* [*53] (additional citation omitted). These four factors are not exclusive, however. See *Zheng v. Liberty Apparel Co.*, *355 F.3d 61, 68-71 (2d Cir. 2003)* A court "is free to consider any . . . factors it deems relevant to its assessment of the economic realities." *Id. at 71-72* One additional factor of particular relevance here is whether the individual in question holds an ownership interest in the business. See *New Silver Palace I, 246 F. Supp. 2d at 229-30*

### B Non-Banquet Tip Sharing at 88 Palace

Plaintiffs allege that two "employers" at 88 Palace, Gong Gui Guan and Dai Hai Nan, illegally shared in the non-banquet tips (P. Mem Reply to 88 Palace at 20.) As noted above, to the extent plaintiffs rely on federal law, they can prevail only if defendants have relied on the tip credit. See *29 U.S.C. § 203(m)*; see *Platek v. Duquesne Club*, *961 F. Supp. 838-39 (W.D. Pa. 1995)*; cf. *New Silver Palace I 246 F. Supp. 2d at 230* ("Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them [*54] the full hourly minimum wage."). The Court has already determined, however, that in light of the dispute as to whether the banquet service fees formed part of plaintiffs' wages, there is a genuine issue of material fact as to whether defendants relied on the tip credit. See supra Part I.B Thus, there must also be a genuine issue of material fact as to whether the retention of non-banquet tips was illegal under the FLSA.

State law presents a different issue, because the New York Labor Law does not condition the employer tip-sharing prohibition on whether the employer takes advantage of the tip credit to meet minimum wage requirements. The Court nevertheless denies plaintiffs' motion for summary judgment on this issue, because

plaintiffs have failed to demonstrate that the individuals were either "employers" or that they fell into some other category of persons barred from sharing tips under New York law.

Plaintiffs rest their claim that Gong Gui Guan and Dai Hai Nan were barred from sharing tips primarily on the fact that both of them own (or owned) n25 shares in 88 Palace. In the case of Gong Gui Guan, plaintiffs argue that his undisputed ownership share "by itself[] rendered [*55] him an employer under the law." (P. Mem at 48-49.) Plaintiffs cite no authority supporting that proposition, however, and in view of the evidence in the record, there is clearly a genuine issue of material fact as to whether Gong Gui Guan and Dai Hai Nan fit the definition of employer established by New York and federal law n26 As noted by defendants, for example, Gong Gui Guan testified that he did not regard himself as part of the management; that he could be fired for misconduct; and that he never made suggestions or recommendations to the management about how the restaurant should be run. (Gong Gui Guan Dep 63:2-3, 78:15-18, 79:18-23, 93:20-25.) With regard to Dai Hai Nan, plaintiffs present *no* evidence in their brief suggesting that he "possessed the power to control the workers in question," *Herman, 172 F.3d at 139,* and rely solely on the fact that he owned one half of one share in the restaurant n27 (P. Mem. at 6, 49.) This is insufficient on the current record to warrant summary judgment in plaintiffs' favor In any event, defendants have disputed that Dai Hai Nan ever owned this one-half share. (88 Palace Mem. at 14.)

n25 88 Palace claims that effective approximately February 2005, Gong Gui Guan is not a shareholder. (See 88 Palace Response to P. Rule 56.1 Statement P4.)

[*56]

n26 To the extent plaintiffs rely on New Silver Palace I and Ayres to support the claim that part-owners are necessarily ineligible for tip sharing, their arguments are misplaced. In New Silver Palace I, the court held that certain individuals were ineligible to share tips because they "were part-owners of the restaurant, as well as agents of the owners, sat on the restaurant's Board of Directors, and exercised substantial managerial authority over the day-to-day operations of the restaurant." *New Silver Palace I, 246 F. Supp 2d at 230.* In Ayres, the individual improperly retaining tips was an employer who had the "full authority" to suspend or terminate employees, supervised wait staff, made hiring decisions, and helped

manage the restaurant's budget, including payroll. *12 F. Supp. 2d at 308.* Plaintiffs also cite *In re Ngan Gung Rest Inc v New York (In re Ngan Gung Rest, Inc.), 183 B.R. 689 (Bankr S.D.N.Y. 1995),* for the proposition that tip sharing by part-owners is illegal. Ngan Gung held no such thing; rather, the court held that a state action to enforce *New York Labor Law § 196-d* was "excepted from the automatic stay pursuant to § 362(b)(4)" of the Bankruptcy Code. *Id at 695.*

[*57]

n27 The total number of shares held by the restaurant's owners was at least thirty. (See Cheffo Dec Ex 7.)

Though plaintiffs may also prevail against 88 Palace under New York law simply by showing that, regardless of whether Gong Gui Guan and Dai Hai Nan were employers, owners, or managers, they were not waiters, busboys, or "similar employees," plaintiffs' briefs fail to squarely address this issue under this standard, and do not set forth sufficient facts that could allow the Court to make such a determination on its own. See *Barlette v. CONRAIL., 1994 U.S. Dist. LEXIS 18621, 92 Civ 251S (WMS), 1994 WL 721342. at *2 (W.D.N.Y. Dec. 6, 1994)* (noting that a party seeking summary judgment has the burden of "identifying for the court those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact," and that "it is not the court's responsibility to probe the entire record to determine the absence of material issues of fact" (citations and internal quotation marks omitted)); see also *United States v. CNA Finan. Corp. 168 F. Supp. 2d 1109, 1121 (D. Alaska 2001)* [*58] (explaining that even where the "general thrust" of the moving party's arguments seems "plausible," it is "not the court's responsibility to sift through all the deposition testimony and other exhibits submitted by the parties to find support for a party's arguments," and that it "is incumbent upon the [moving party] to support its motion with exhibits appropriately cited, to establish that there are no genuine issues of material fact in dispute, and to establish that it is entitled to summary judgment as a matter of law") Moreover, evidence cited by defendants suggests that both Gong Gui Guan and Dai Hai Nan performed service duties. (See, e.g., Hochheiser Dec. Ex 22; Gong Gui Guan Dep. 11:21-22.) In view of plaintiffs' failure to adequately present contrary evidence, the testimony cited by defendants suffices to create a genuine issue of material fact regarding Gong Gui Guan and Dai Hai Nan's eligibility to share plaintiffs' tips

The 88 Palace defendants also seek summary judgment on this issue However, in view of Gong Gui Guan's undisputed ownership interest and Dai Hai Nan's alleged one-half share, there is a genuine issue of material fact as to whether these defendants [*59] fell into a category of individuals--such as employers--who were barred from taking tips. Cf. *New Silver Palace I. 246 F Supp 2d at 230* (holding that managers with ownership interests could not legally share employees' tips) n28 If Gong Gui Guan and Dai Hai Nan were in fact "employers" who took from the tip pool, this will be enough to establish a violation of state law, and the fact that they also performed some service duties would not immunize 88 Palace from liability See *id at 229.*

n28 Indeed, defendants appear to concede at one point in their brief that the Court should not determine Gong Gui Guan's employer status on summary judgment (88 Palace Mem. at 16, arguing that "it must be left to a jury to determine whether . Gong Gui Guan . qualifies as an employer.")

C. Non-Banquet Tip Sharing at Triple 8

As in the case against 88 Palace, plaintiffs can only prevail on a federal claim against the Triple 8 defendants based on non-banquet tip sharing if Triple [*60] 8 relied on the tip credit See *29 U S C § 203(m)*; see *New Silver Palace I, 246 F Supp 2d at 230*; see also *Duquesne, 961 F Supp. at 838-39* But unlike in the case of 88 Palace, the Triple 8 defendants concede that they relied on the tip credit (Triple 8 Mem at 9)--despite the fact that this presents something of an inconsistency with their claims regarding the service fees, see supra Part I.D.4. Thus, the Triple 8 defendants may be liable under both state *and federal* law if they forced plaintiffs to share their tips with ineligible employees

1. The former defendants

Plaintiffs claim that Triple 8 violated restrictions on tip sharing by allowing former defendants Mandy Chan, Chiu Ng, Wei Wong, and Zen Quan Zhao ("the former defendants") to retain some of the non-banquet tips. Tip sharing by these workers was impermissible, plaintiffs argue, because the former defendants "had significant management responsibilities"; carried business cards indicating that they were managers; were permitted to represent to customers they were managers; accepted and paid for deliveries; escorted health inspectors during visits; [*61] and addressed customer complaints (P. Mem. at 12.) They also supervised waiters and busboys; made menus; set menu prices; set shifts for other employees; made hiring recommendations; and documented

and calculated tip sharing (Id.) Both Triple 8's brief and Kwok Ming Chan's affidavit reject the former defendants' characterization of their jobs. (Triple 8 Mem. at 21; Kwok Ming Chan Affidavit PP17, 22.)

To the extent plaintiffs are attempting to prove that the above-noted responsibilities made the four former defendants "employers" under federal and state law, plaintiffs have not made a showing adequate for summary judgment As plaintiffs note elsewhere in their brief, the "overarching concern" in determining employer status "is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." *Herman, 172 F 3d at 139* (citations and further internal quotation marks omitted) Though plaintiffs have recited a list of employment duties held by the former defendants, they do not adequately explain how and to what extent these facts demonstrate that the former defendants "possessed [*62] the power to control" the plaintiffs If the former defendants had several important responsibilities and some degree of authority over waiters and busboys, that may lend substantial support to the argument that they were "employers," but absent more, and in light of defendants' contrary testimony (Kwok Ming Chan Affidavit PP17, 22), it is not sufficient to entitle plaintiffs to judgment as a matter of law n29

n29 Plaintiffs also allege that Hang Li was ineligible under federal and state law to share in the tip pool because he was a "manager," but the evidence on which plaintiffs rely is insufficient for summary judgment purposes. Hang Li's testimony, for example, indicates that he may have been confused as to what "manager" meant (Hang Li Dep 20:12-16, 21:7 to 25:15.)

Of course, even if the former defendants were not "employers," plaintiffs could prevail against Triple 8 under federal law if they demonstrated that the former defendants were not employed in an occupation in which they "customarily and regularly [*63] received tips"; and they could prevail under state law if they demonstrated that the former defendants were not waiters, busboys, or "similar employee[s]." *29 U S C § 203(m)*; *New York Labor Law § 196-d* Once again, however, plaintiffs have not adequately addressed the facts under the proper standard Moreover, while many of the facts noted above suggest that plaintiffs have a strong case, other evidence raises questions regarding whether, even under the correct, broader standard, plaintiffs would be entitled to judgment as a matter of law The affidavits submitted by the former defendants, for example, indicate that despite some managerial responsibilities, they all continued to

wait on tables during their employment at Triple 8 (Cheffo Dec. Exs. 1-4.) Defendant Kwok Ming Chan, moreover, submitted an affidavit claiming that none of the former defendants were managers and that all of them waited on tables. (Kwok Ming Chan Affidavit PP17, 22.) In light of the disputed facts and the confusion surrounding the legal standard, plaintiffs are not entitled to summary judgment on this claim as it pertains to the former defendants. n30

> n30 Though the Court denies plaintiffs' motion for summary judgment against Triple 8 on the question of non-banquet tip sharing by these defendants, the Court does not by any means credit all of the arguments presented by defendants. Like plaintiffs, defendants do not address the facts under the proper legal standard. Moreover, defendants' argument that the former defendants were entitled to share tips because their jobs were identical to those of plaintiffs does not find support in the record. For instance, 88 Palace claims that plaintiff Yan Bin Cao "acknowledged that he was often referred to as a 'supervisor'"; that he kept records of other employees; and that his duties "included directing busboys and waiters." (Triple 8 Mem. at 21.) In the deposition testimony on which defendants rely, however, Yan Bin Cao stated the his job was the same as that of a waiter, that he gave no orders but rather conveyed to others the instructions of the management; that he did not keep any records; and that he was not even sure what "supervisor" meant (Yan Bin Cao Dep. 35:10-12, 39:4-7, 54:2, 135:20.)

[*64]

2 Retention of tips by Triple 8 defendants

Plaintiffs also allege that the Triple 8 defendants themselves--including Kwok Ming Chan, the restaurant's undisputed owner, manager and employer, and Grace Chan, the restaurant's other shareholder and an officer of the corporation (Triple 8 Mem. at 5, 22; see also Grace Chan Dep. 43)--illegally shared in the tip pool prior to a well-publicized labor dispute at a different restaurant, Jing Fong, which took place in 1997 Kwok Ming Chan's testimony supports plaintiffs' arguments (Kwok Ming Chan Dep. 264:8 to 266:24, 350:4-12), and Triple 8's brief does not dispute the accuracy of the cited testimony. Thus, there appears to be no genuine factual issue as to whether the Triple 8 defendants improperly retained tips prior to the 1997 Jing Fong dispute. n31

n31 Defendants' failure to present contrary evidence might result from their misunderstanding of plaintiffs' claims. Though plaintiffs' allegation that the Triple 8 defendants shared in the tip pool appears both in their summary judgment papers (P. Mem. at 14, 47) and in the complaint (Complaint P62), defendants erroneously state in their brief that "there are no allegations" that Kwok Ming Chan shared in the tip pool (Triple 8 Mem. at 22.)

[*65]

Summary judgment on this issue is nevertheless not warranted, because it remains unclear to what extent the relevant statutes of limitations bar the conduct in question. See 29 U.S.C. § 255(a) ("Any action . . . to enforce any cause of action for unpaid minimum wages . . . under the Fair Labor Standards Act of 1938, as amended . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . ."); New York Labor Law § 663(3) ("An action to recover upon a liability imposed by this article must be commenced within six years.") Though the Triple 8 defendants do not press a statute of limitations defense in their summary judgment papers, the defendants have, according to plaintiffs' brief, consistently maintained throughout discovery that the statutes of limitations bar liability for pre-1997 conduct. (P. Mem. at 47 n.33.) The Triple 8 defendants also relied on the statutes of [*66] limitations in their answer to the complaint. (Triple 8 Answer P100.) Under these circumstances, the Court is reluctant to conclude that the defense is forfeited. Cf. Kulzer v. Pittsburgh-Corning Corp., 942 F.2d 122, 125 (2d Cir. 1991) (holding that "bare assertion" of statute of limitations in answer preserved it to be raised again midtrial, despite failure to raise it in pretrial dispositive motions)

That is not to say, however, that the statutes of limitations will necessarily bar liability for Triple 8's pre-1997 conduct. Plaintiffs claim in a footnote to their opening brief that defendants' "deceptive conduct prevented the Plaintiffs from discovering or asserting their claims any earlier than they did." (P. Mem. at 47 n.33.) If this allegation has merit, defendants may be barred from asserting that plaintiffs' claims have expired. See, e.g., Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 942 (2d Cir. 1998) ("Under New York law, as generally, a party may be estopped from raising a statute of limitations defense where his fraud, concealment, or deception prevented the plaintiff

from timely filing his claim.") [*67] The current record is not developed enough to allow meaningful consideration of the issue.

### III. Notice of Minimum Wage and Tip-Sharing Laws

Under federal law, employers cannot claim a tip credit unless employees are properly informed of the provisions of *29 U.S.C. § 203(m) New Silver Palace I, 246 F. Supp. 2d at 228-29.* Employers may satisfy this requirement if they give employees a copy of *§ 203(m)* and inform them that their tips will be used as a credit against the minimum wage as permitted by law. See *Kilgore, 160 F.3d at 298-300.* Employers do not have to "explain" the tip credit to employees, however; it is enough to "inform" them of it. *Id. at 298.*

Under New York law, all restaurant employers must post, "in a place accessible to      employees and in a visually conspicuous manner, a copy of      section[] one hundred ninety-six-d" of the Labor Law and "any regulations promulgated pursuant thereto relating to illegal deductions from wages and tips by employers." *New York Labor Law § 198-d.*

The evidence regarding compliance with notice requirements at both Triple [*68] 8 and 88 Palace consists primarily of testimony that is conflicting, conclusory, evasive or ambiguous; such testimony is insufficient to entitle any party to summary judgment. (See, e.g., Hang Li Dep. 55:21 to 56:24, Kwok Ming Chan Affidavit P23, Christopher Miu Affidavit P8; Fong Li Dep. 76:3-5, Gui Yang Dep. 105:21 to 107:25, Yeung Chao Lo Dep. 147:12 to 149:23, Kung Tak Yeung Dep. 111:5 to 112:25.) However, to the extent plaintiffs allege that 88 Palace violated New York notice requirements from the time of the restaurant's opening until December 11, 2003, the evidence weighs more heavily in plaintiffs' favor and warrants further discussion.

Plaintiffs argue that 88 Palace defendants failed to comply with New York state posting requirements (see Shing Tao Au Dep. 67; P. Mem. at 54-55), and specifically allege that no sign was posted from the time 88 Palace opened in August 2002 until at least December 11, 2003, the date on which 88 Palace purchased a notice from the New York Department of Labor. (See id. at 55; see also P. Reply to Triple 8 Mem. at 18.) In response, 88 Palace makes the erroneous argument that New York notice requirements do not apply to employers [*69] who do not take advantage of the tip credit. n32 (See 88 Palace Mem. at 12.) While this restriction exists under federal law, *New York Labor Law § 198-d* requires *all* restaurant employers to post a copy of *§ 196-d* and corresponding regulations, regardless of whether the employer takes advantage of the tip credit.

n32 This requirement provides a further reason for denying summary judgment on plaintiffs' claims of violation of the federal posting requirement. Because there is a genuine issue of material fact as to whether 88 Palace relied on the tip credit, there must also be a genuine issue of material fact as to whether defendants violated the notice requirement of *29 U.S.C. § 203(m).*

Though they misstate the legal standard under state law, the 88 Palace defendants nevertheless claim that plaintiffs were given adequate notice of minimum wage provisions. Remarkably, however, the 88 Palace defendants do not dispute plaintiffs' claims insofar as plaintiffs [*70] allege violations before December 11, 2003. Rather, the 88 Palace defendants claim only that notice was posted (1) "at some point after the restaurant opened for business" and (2) "prior to January 2004," which is over sixteen months after the restaurant's opening. (88 Palace Mem. at 12.) Defendants expressly concede that 88 Palace did not purchase a Department of Labor sign until December 11, 2003 (id.), and documents produced by 88 Palace's accountant confirm the accuracy of this date. (See Cheffo Dec. Ex. 25.) Though it may be possible to comply with *New York Labor Law § 198-d's* requirements without purchasing an official sign--perhaps by making one's own sign--defendants do not claim that they did so. In fact, defendant Yeung Chao Lo testified that the restaurant did not post a sign until it received one from the Department of Labor. (Yeung Chao Lo Dep. 147:12-17.) Kung Tak Yeung's testimony also indicates that the only sign posted was the sign received in the mail (Kung Tak Yeung Dep. 111:13-16), and 88 Palace's brief implicitly concedes the same. (See 88 Palace Mem. at 12 ("As Plaintiffs note, Gui Yang and Yeung Chao Lo both testified that [*71] a minimum wage notice was mailed to 88 Palace and posted at some point after the restaurant opened for business."; see also id., stating that "88 Palace purchased the Department of Labor sign on December 11, 2003," and arguing that this date of purchase supports Gui Yang's testimony that 88 Palace posted a notice prior to January 2004.) Thus, it appears to be beyond question that 88 Palace was in violation of *New York Labor Law § 198-d* from the time of the restaurant's opening until at least December 11, 2003. n33

n33 Though defendant Kung Tak Yeung testified at one point during his deposition that he posted the notice at 88 Palace when he took over the restaurant in 2002 (Kung Tak Yeung Dep. 111:5-9), he subsequently contradicted--and effectively disavowed--that claim. For example, immediately after claiming that he posted a sign when the restaurant opened, he stated that he

posted the sign "after August" 2002 (Id. at 111:13.) Later, he claimed that he "didn't pay attention" to when the sign was posted. (Id. at 112:25.)

[*72]

Plaintiffs' motion for summary judgment on this claim is nevertheless denied, because even if defendants violated § 198-d during the time period in question, it remains unclear whether and in what sense defendants are liable to plaintiffs for that violation. Unlike 29 U.S.C. § 203(m), which renders employers ineligible for the tip credit if they fail to provide adequate notice, New York Law Labor § 198-d does not provide for any remedies or penalties against employers who violate its provisions. The Court has not found any statute or case law describing what legal consequences, if any, flow from an employer's violation of § 198-d, and plaintiffs have not described the specific nature of the harm that they suffered as a result of the alleged violation n34 Without demonstrating whether, to what extent, or in what sense defendants' alleged violation of § 198-d inflicted a redressable harm or gave rise to a specific legal consequence or obligation, plaintiffs' motion for summary judgment on the question of liability must fail. Cf. Mattox v. News Syndicate Co., 176 F.2d 897, 901 (2d Cir. 1949) ("Liability means the obligation to redress the [*73] person wronged . . . "); Black's Law Dictionary 932 (8th ed. 2004) (defining "liability" as the "quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment"). n35

n34 Plaintiffs' complaint does not even cite § 198-d, though this need not affect the merits of plaintiffs' claim, given that the complaint's reference to defendants' general failure to provide notice could be read as incorporating a § 198-d claim. (See Complaint PP1, 74, 83); see McEachin v. McGuinnis, 357 F.3d 197, 199 n.2 (2d Cir. 2004) ("It is well-established that the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim Factual allegations alone are what matters." (citation and internal quotation marks omitted)) More importantly, however, the complaint fails to specify any possible remedy for the notice violation, other than to claim that an employer who fails to provide notice is ineligible for the tip credit However, since plaintiffs seek, even if state law, like federal law, provided that employers who violate notice provisions are ineligible for the tip credit, plaintiffs would still not be entitled to summary judgment, because there is a genuine issue of material

fact as to whether 88 Palace relied on the tip credit to satisfy minimum wage requirements.

[*74]

n35 Moreover, to the extent plaintiffs fail to allege a redressable harm arising from defendants' alleged violation of § 198-d, their claim may be barred by lack of standing See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) However, given the limited extent of the parties briefing on the § 198-d issue, the Court will not render any ruling on the standing question at this stage

## IV Spread of Hours

Under New York law, employers must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage law], for any day in which (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur " N.Y. Comp. Codes R. & Regs. tit 12, § 142-2 4 "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday " Id. § 137-3 11 "The spread of hours for any day includes working time plus time off for meals plus intervals off duty." Id Plaintiffs allege that both defendants violated [*75] this provision by failing to pay an additional hour at minimum wage on days when plaintiffs worked a spread of hours exceeding ten hours.

Defendants, in response, rely on a 2003 advisory letter from the New York Department of Labor, issued in an unrelated matter n36 In the letter, the Department explains that "in determining compliance with [the spread-of-hours provision], the Division of Labor Standards computes the total minimum wages due an employee for the workweek and compares it with the compensation actually received by the employee for that workweek." (88 Palace Mem. at 16-17.) If the total compensation is equal to or greater than the minimum wages due, including compensation for an additional hour for each day in which the spread of hours exceeds ten, "no additional payments are due the employee because of the spread-of-hours provision found" in N.Y. Comp. Codes R. & Regs. tit 12, § 142-2 4 (Id.) This interpretation makes sense, since § 142-2.4 by its own terms is concerned only with ensuring an additional amount above the "minimum wage" when certain conditions are met (emphasis added). n37

n36 Only the 88 Palace defendants cite the letter in their brief, but the letter's contents have equal relevance to the spread-of-hours claim against Triple 8

[*76]

n37 New York law defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." *New York Labor Law § 190(1)*.

At least one court has rejected the interpretation on which defendants rely In *Doo Nam Yang v ACBL Corp, 2005 U.S. Dist. LEXIS 31567, 04 Civ 8987 (LBS), 2005 WL 3312000 (S D N Y Dec 5 2005)*, Judge Sand noted the New York Department of Labor's interpretation but declined to adopt it because "the effect of adopting the agency's interpretation would be to carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage." *Id 2005 U.S Dist LEXIS 31567 [WL] at *7* In Judge Sand's view, nothing in the regulations dictated such an exception. This Court respectfully disagrees. The plain text of *§ 142-2 4* ensures an additional wage only "in addition to the *minimum* wage" required under New York law (emphasis added). It is therefore to be expected that the provision will not affect workers whose total weekly compensation [*77] is already sufficiently above the minimum rate.

Here, a genuine issue of material fact exists as to the amount of non-tip compensation earned weekly by the plaintiffs, because the parties dispute whether the portion of banquet service fees retained by plaintiffs constituted "tips." See supra Parts I B to I D Because plaintiffs' total non-tip compensation remains unknown, the Court cannot determine at this stage whether either set of defendants has violated the spread-of-hours provision n38

n38 This conclusion is not undermined by Triple 8's reliance on the tip credit, because Triple 8's purported reliance on the tip credit may have been unnecessary That is, even if Triple 8 believed itself to be relying on the tip credit, the total weekly non-tip compensation to plaintiffs may have exceeded the minimum wage See supra Part I D 4

V Uniform Laundering

New York law provides that "no allowance for the supply, maintenance, or laundering of required uniforms shall be permitted as part of the [*78] minimum wage." *N.Y Comp Codes R & Regs tit 12, § 137-1 8*. "Where the employer fails to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage . . (a) $ 6 40 per week on and after March 31, 2000, if the employee works more than 30 hours weekly . . ." Id The provision only applies "if the employees' expenditures for [uniform-maintenance] purposes would reduce their wages to below minimum wage." *Ayres 12 F Supp 2d at 310*. n39

n39 Though plaintiffs dispute this interpretation of the law, claiming that defendants were required to pay for uniform-related costs regardless of the amount received in wages, they do not cite any authority for their argument. The law's plain language provides that employers who fail to maintain and launder employees' uniforms need only pay an additional amount above the *"minimum"* wage to cover uniform-related costs *N.Y. Comp Codes R & Regs tit 12, § 137-1 8* (emphasis added). If the employers already pay a sufficient amount for laundering as part of regular compensation, they have complied with *§ 137-1 8*, even if they have not expressly declared that a certain portion of the wage represents reimbursement for uniform-related expenses

[*79]

Here, it is impossible for the Court to determine whether plaintiffs' uniform-related expenditures would reduce their wages below the minimum wage, because there is a genuine issue of material fact as to whether the banquet service payments at 88 Palace and Triple 8 were wages Accordingly, neither plaintiffs nor 88 Palace are entitled to summary judgment on this issue.

## CONCLUSION

For the reasons discussed, both motions for summary judgment are denied in their entirety.

SO ORDERED.

Dated: New York, New York

March 30, 2006

GERARD E LYNCH

United States District Judge